CASE 44.—PROSECUTION AGAINST TOM OWSLEY FOR ARSON.—April 18.

# Owsley v. Commonwealth

Appeal from Lincoln Circuit Court.

W. C. BELL, Circuit Judge.

Defendant convicted and appeals. Reversed.

1. Confession—Voluntarily Made—Matters to Consider—Doubt— In determining whether or not a confession is voluntarily made, it is proper to consider the age, situation and character of the accused, and the circumstances under which it was made, and if there is reasonable doubt as to whether or not it was voluntarily made the trial court should exclude it from the jury.

2. Same—Age and Ignorance of Defendant—Fears of Violence— Admissibility as Evidence—Where an ignorant, stupid colored boy, between eleven and twelve years of age, who was accused of the crime of arson, was taken into a room by three white men and, while not threatened, was badly frightened and feared violence, a confession made under such circumstances can not be said to be free and voluntary, and should not have been allowed to go to the jury.

3. Infant—Criminal Responsibility—Instructions to Jury—Where a boy under fourteen years of age was on trial for the crime of arson, the court should have instructed the jury that if they believed from the evidence that the defendant was under fourteen years of age at the time the alleged crime was committed, the law presumes that he did not know it was wrong, and this presumption entitled him to an acquittal, unless the jury were satisfied from the evidence that he was then aware of the wrongful character of the act, and of his legal responsibility for it.

J. B. PA TON, attorney for appellant.

1   On the trial of an infant 11½ years of age for the crime of

Owsley v. Commonwealth.

arson, proof of an alleged confession should not be admitted where the circumstances indicate it was made under duress or fear.

2. In the absence of proof that an infant, under 14 years of age, knew that the offense with which he was being tried was wrong, a peremptory instruction should be given to jury to find him not guilty.

3. Under the Act of the Kentucky Legislature of 1906 (Session Acts, chapter 64, page 322), providing for the trial of "all delinquent male children under 17 years of age," the circuit court had no jurisdiction to try defendant, but he should have been tried in the county court.

### CITATIONS.

Roberson's Ky. Criminal Law and Procedure, Sec. 959-962; McClure v. Commonwealth, 81 Ky., 448; Willett v. Commonwealth, 13 Bush, 230; Heilman v. Commonwealth, 84 Ky., 459; Acree, &c., v. Commonwealth, 13 Bush, 353; Acts of General Assembly of 1906, chap. 64, page 322; 12 Cyc., 199.

N. B. HAYS, Atty. Genl.; C. H. MORRIS, and MORRIS & SOUTH for appellee.

1. While it is a well settled principle of law that a youth between seven and fourteen years of age has the benefit of the prima facie presumption that he does not know the import of his acts, and that it takes convincing evidence that he does know he has committed a crime, it is also well settled that the nearer he is to the age of 14, the presumption lessens, and less evidence is required to remove the benefit that the law gives to one of tender years.

2. The "Juveline Court Act" of 1906 applies only to misdemeanor cases, and not felonies.

3. We submit that under the instructions of the court the jury fully understood the law and their duty, and that appellant was not prejudiced thereby.

OPINION OF THE COURT BY JOHN D. CARROLL, COMMISSIONER—Reversing

Under an indictment charging him with the common

law offense of arson, appellant was put upon his trial and found guilty; his punishment being fixed at five years' imprisonment in the State penitentiary.

Except for a confession proven to have been made by appellant, it is doubtful if the jury would have found him guilty, although there is other evidence tending to show his connection with the crime, and we do not adjudge that it was not sufficient to warrant his conviction. It therefore becomes important to determine whether or not evidence of his confession should have been submitted to the jury. The action of the trial judge in admitting it is the chief error complained of.

Owsley is a negro boy, and at the time of the commission of the crime with which he is charged was between 11 and 12 years of age. The evidence conduces to show that he was not very bright, and was considered stupid. When he was arrested charged with the commission of the crime, he was taken before the police court at Houstonville to have an examining trial. He was not represented by counsel, nor does it appear that any friend or relative capable of advising him was present. Just before the examining trial took place, Charlie Brown, a grandson of the lady whose privy was set on fire, in company with Charles Wheeler and W. G. Cowan, two other white gentlemen, took Owsley into a room adjoining the courtroom, when the following took place: ''Wheeler asked the defendant Owsley, where he got the coal oil that was poured on the privy at the time it was set afire, and why he set the privy afire. The defendant denied that he got the coal oil or set the privy afire. Wheeler said then, 'We know you did not, but which of the others did?' He denied at first that any of them did, but after further questioning by Mr. Wheeler said that he got the coal oil, that ——

poured it on, and that Claude Bailey struck the match." James P. Good testified that he was mayor of Houstonville, and, in the absence of the police judge performed the duties of that office and presided at the examining trial of Owsley; that "just before the trial the defendant Tom Owsley was taken into a room adjoining the courtroom by W. G. Cowan, Charles Wheeler, and I think Rue B. Rose. After they had been in there a while, Cowan opened the door and motioned to me to come in; and after I went in Cowan said to the defendant Owsley, 'Now, tell Mr. Good what you have just told us;' and Owsley confessed that he and the defendant Claude Bailey and the other defendants named in the indictment had set fire to the privy of Mrs. Brown." This witness also stated that shortly after this the defendant Tom Owsley was introduced as a witness on the examining trial and made the same statement on the stand that he had made to him in the room. The appellant Owsley, testifying in his own behalf, said that, although not guilty, he did tell Brown and others at the examining trial what they testified to, but that he made the confession because he was frightened; that, when they first asked him about it, he told them that he had nothing to do with the fire, and knew nothing about it, but that they threatened to shoot and kill him if he did not acknowledge his guilt. The gentlemen to whom the confession was made were put upon the witness stand in rebuttal, and denied that they had made any threats to or against Owsley at the time he acknowledged his guilt.

It may be conceded that no threats of violence were employed to obtain from Owsley the confession made by him, but the facts remain that Owsley was a stupid, ignorant negro boy; that he was surrounded

by white men who were probably exasperated by the
knowledge that the house of a lady in their com-
munity had been set on fire; that Owsley was not
represented by counsel or advised by any friend or
other person, or cautioned as to the effect of any
statement he might make.    When he was taken into
a room by three prominent white citizens of the place,
it is not difficult to believe that he was badly fright-
ened, and in his feeble ignorant way feared that some
violence might be done him.    Under these circum-
stances, it cannot with propriety be said that his con-
fession was freely and voluntarily made, and it is
necessary to the admissibility of confessions that they
shall have been so made.    In determining whether or
not a confession is voluntarily made, it is proper to
consider the age, situation, and character of the
accused, and the circumstances and surroundings
under which the confession is made; and, if there is
reasonable doubt as to whether it was voluntarily
made or not, the court should exclude it from the
jury.    If this confession had been procured by prom-
ise of reward or hope of immunity from punishment
or extracted by violence or threats, it would be clearly
incompetent as evidence against the accused; but, as
the decided weight of the testimony tends to establish
that no promise of immunity or hope of reward was
held out or violence or threats employed, it is said
that under the general rule respecting the admissi-
bility of confessions the action of the trial court was
proper.    If the accused had been a white or colored
man, or an intelligent boy of mature years, we are
not prepared to say that under the facts his con-
fession would be incompetent, but it must be conceded
that there is a wide difference between the situation
of this feeble-minded colored boy under 12 years of

age, in custody under a serious and aggravating charge, surrounded by prominent white men, who take him into a room for the purpose of forcing a confession, and that of a grown man or intelligent boy who might be presumed to have discretion and judgment enough to protect himself from any incriminating admission. We are of the opinion that it was error to permit Owsley's confession to go to the jury as evidence against him. That it was prejudicial to his substantial rights there is no room to doubt.

Instruction No. 3, which is as follows, is complained of: "If you believe from the evidence that either of the defendants did not know the legal responsibility that attached to the crime of arson, or that there was any legal responsibility that attached to the commission of such crime, then you will find such one as the case may be not guilty, although you may believe from the evidence beyond a reasonable doubt that such one set fire to said outhouse at the time and place named in instruction No. 1." The law is very careful to protect in every reasonable way the rights of children who are put upon trial charged with serious crimes. In its tender regard for their lack of discretion and judgment, as well as want of appreciation of responsibility of crime, it has come to be a part of the criminal jurisprudence of this State that, when a child under 14 years of age is put upon his trial, the question as to whether or not he had mind and discretion sufficient to discern between good and evil and to know the wrongful character of his act should be submitted to the jury. In the case before us, in place of the instruction quoted, the court should have instructed the jury that, if they believed from the evidence that Owsley at the time the alleged crime was committed was under the age of 14 years,

then the law presumes that he did not know it was wrong, and this presumption entitled him to an acquittal, unless the jury were satisfied from the testimony that he was then aware of the wrongful character of the act and of his legal responsibility for it. Heilman v. Commonwealth, 84 Ky. 457, 8 Ky. Law Rep. 451, 1 S. W. 731, 4 Am. St. Rep. 207.

We may also add that the Legislature has established a House of Reform where persons under the age of 18 years who are convicted or charged with any crime may be committed; and, if upon another trial the appellant is convicted, we suggest to the lower court the propriety of committing him to the House of Reform, instead of the State penitentiary; or, even before another trial, if the judge of the lower court deems it best to do so, and appellant or his parent or guardian consents, he may direct his incarceration in this institution.

For the errors mentioned, the judgment is reversed, with directions for a new trial in conformity with this opinion.