## Sutton v. Commonwealth.

(Decided March 3, 1925.)

### Appeal from Owen Circuit Court.

1. Criminal Law—Confession or Disclosure of Accused Made After Arrest Without Extortion is Admissible—"Extorting."—Confession or disclosure of accused made after arrest to officer having him in custody, is admissible when obtained without "extorting" it by methods condemned by the Anti-Sweating Act (Ky. Stats. 1922, sections 1649b-1, 1649b-5); "extorting" meaning compelling or coercing a confession or information by any means serving to overcome his power of resistance, or making the confession or admission involuntary.

2. Criminal Law—Confession made by Codefendants and Assented to by Accused Held Properly Admitted.—Confessions of accused's codefendants, made in his presence and voluntarily assented to by him, held properly admitted to corroborate his own confessions to substantially the same effect.

3. Criminal Law—Instruction that Conviction Cannot Rest Upon Uncorroborated "Testimony" of Accomplice Held Not Required.—Instruction, pursuant to Criminal Code of Practice, section 241, that conviction cannot rest upon the uncorroborated testimony of an accomplice, held not required where testimony upon which conviction was based was given by witnesses to whom defendant and the accomplices confessed in the presence of each other without substantial disagreement; "testimony" being statement made by a witness under oath or affirmation; words uttered by witnesses in court (citing Words and Phrases, "Testimony").

4. **Larceny—Evidence of Felonious Motive of Trip Other than that of Stealing Car, Subject of Instant Prosecution, Held Properly Admitted.**—In a prosecution for larceny of a Ford car by accused and two accomplices, evidence that trip on night of larceny was for the double purpose of ditching an Essex car to enable owner to obtain insurance on it, and of stealing the Ford car, held properly admitted to connect the two offenses, identify the actors in the two transactions as the same, and prove the felonious intent.

5. **Larceny—Refusal to Direct Verdict of Acquittal Held Proper.**— In a prosecution for stealing an automobile, refusal to direct verdict of acquittal held proper.

6. **Criminal Law—Argument of Commonwealth's Attorney as to Effect of Another's Plea of Guilty, Held Improper but Not Reversible Error.**—Argument of Commonwealth's attorney as to effect to be given to accomplice's plea of guilty in determining accused's guilt or innocence, held improper, but not to require reversal, in view of overwhelming evidence of accused's guilt and minimum punishment he received.

J. W. CAMMACK and H. W. ALEXANDER for appellant.

FRANK E. DAUGHERTY, Attorney General, and JOHN J. HOWE, Commonwealth's Attorney, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE— Affirming.

The appellant William Sutton, John Gaylog and Raymond Cook were jointly indicted in the court below for the crime of stealing an automobile of the value of $600.00, owned by William Bond. The appellant, Sutton, was accorded a separate trial, which resulted in a verdict finding him guilty and fixing his punishment at confinement of one year in the penitentiary. He was refused a new trial and has appealed from the judgment entered upon that verdict.

The defendant, John Gaylog, as appears from the record before us, was previously tried and, upon his plea of guilty, convicted of the offense charged in the indictment, the punishment inflicted being confinement of three years in the penitentiary. The record, however, fails to show whether Raymond Cook, the third defendant named in the indictment, has been subjected to a trial, but does show that he gave bail to appear for trial under the indictment.

Of the numerous grounds that were filed in support of the appellant Sutton's motion for a new trial made in

the court below, the following are now relied on for the reversal of the judgment of conviction asked of this court, viz.: Error committed, as alleged, by the trial court to the prejudice of his substantial rights: (1) In admitting as competent evidence, statements made by the appellant and his codefendants, while under arrest, to certain officers of the law amounting to a confession on the part of each of his and their guilt of the offense charged in the indictment. (2) In admitting as competent evidence, further statements made at the same time by the appellant and his codefendants to such officers, to the effect that their object in going to Owenton on the night the automobile in question was stolen, was to commit another crime in addition to that charged in the indictment. (3) In failing to properly instruct the jury and in refusing instructions offered by the appellant. (4) In permitting, over the appellant's objection, misconduct and incompetent statements on the part of the Commonwealth's attorney in arguing the case to the jury.

The material facts brought out by the evidence were that at 10 o'clock p. m., June 14, 1924, William Bond, of Owenton, Kentucky, left standing in front of his residence in that town a Ford automobile coupe, No. 430440, of which he was the owner. The car then had but little gas in it. Bond, after thus leaving the car, entered his home and immediately retired for the night. But upon quitting his bed early the next morning he discovered that the car had been removed at some time during the night. The car had been in use about four months, was in good repair and worth $600.00.

Upon discovering its absence the following morning, his first thought was that some of the boys of the town had taken it as a practical joke, but upon inquiry he became convinced that it had been stolen, and, acting upon this belief, he got in communication by telephone with the police authorities of Frankfort, Georgetown, Covington, Newport and other places, informing them of the theft of his car and offered a reward of $100.00 for its return to him and the capture of the thieves. These communications resulted a few days later in the recovery of the car by the police at Fort Thomas, Kentucky, and the capture there, or in the contiguous city of Newport, of the persons having it in possession; and upon being advised of these facts Bond, in company with Harry Crouch, of Owen county, and Sam Dempsey, a deputy

sheriff of that county, went at once to Fort Thomas, where he and they saw at the police headquarters a Ford automobile coupe No. 430440, which they identified as the car stolen from Bond. At the same time and place they saw the appellant, William Sutton, John Gaylog and Raymond Cook, then in the custody of the Fort Thomas police charged with the theft of Bond's automobile, and all of whom, by order of the police judge of Fort Thomas, were later removed by Dempsey, deputy sheriff of Owen county, to Owenton for trial.

In the interview had by Bond, Dempsey and Crouch with Gaylog, Cook and the appellant Sutton, each of them, in response to inquiries from the police judge and chief of police of Fort Thomas then present, admitted his and their guilt of the theft of Bond's car and, also, the manner and extent to which each participated therein. That is, each confessed in the presence of the others that by agreement between them the car was taken from Bond's residence by Gaylog and by him driven from Owenton, followed for a time by Sutton and Cook in an "Essex" car, in which they and Gaylog had ridden from Newport to Owenton. That upon getting a few miles from Owenton they emptied the gasoline that was in the Essex car into the car stolen from Bond and then ran the Essex car out of the road, ditched and abandoned it; after which Sutton and Cook got into the car of Bond with Gaylog and rode therein with him to Newport, each in turn acting on the way as the driver, or operator, of the car. It was also stated by each of them that they were employed by the owner of the Essex car, one Young, to "ditch" it in order that he might collect the insurance he had obtained upon it.

After the removal of Gaylog, Sutton and Cook from Fort Thomas to Owenton each made to Ellis, police judge of Owenton, in the presence of Bond, Dempsey, Crouch and others the same admissions of guilt that had previously been confessed by them at Fort Thomas.

The uncontradicted evidence proving the confessions of their theft of Bond's automobile, made by Gaylog, Sutton and Cook, both at Fort Thomas and Owenton was furnished by the testimony of Bond, Dempsey, Crouch and Cook, the chief of police of Fort Thomas; and, as to the confessions at Owenton, also by the testimony of Ellis, judge of the police court of Owenton. In addition to the evidence referred to, there was also evidence showing the possession of the automobile by Gaylog, Sutton

and Cook about the time of, or shortly before, their arrest; which, together with the further testimony of the witness, Crouch, that on the night Bond's automobile was stolen and previous to the theft he met and recognized Gaylog, Sutton and Cook at Sparta as they were on their way to Owenton, strongly tended to identify them as the perpetrators of the crime, and, also, to corroborate the truth of the confession of each of them as to his participation in its commission.

The only evidence introduced or offered in behalf of the appellant appearing in the record was furnished by the testimony of his parents, William and Mary Sutton, and that of the witnesses Albert Smith, Martin Stephany and Herman J. Wesling, all of Newport, Kentucky, the testimony of the parents substantially being, that the appellant was eighteen years of age; was born in Newport; had attended its public schools and always lived in that city; and that his occupation was that of a chauffeur. The testimony of the witnesses, Smith, Stephany and Wesling, bore upon the reputation of the appellant and was to the effect that it was, in their opinion, good, or had been good down to the time of his arrest upon the charge of stealing the Bond automobile.

It is the contention of the appellant's counsel that the entire evidence of the Commonwealth with respect to the confession of his assisting Gaylog and Cook in stealing the automobile of Bond, made by the appellant at Fort Thomas and again at Owenton, as well as his acquiesence in the confessions of his and their guilt of the crime made by the latter, respectively, at each of those places, should have been excluded by the trial court; and that its overruling of his objections thereto and, later, his motion to exclude it from the consideration of the jury, was so prejudicial to his substantial rights as to entitle him to a reversal of the judgment.

This contention is rested upon the theory that the confessions were coerced or extorted by means condemned by chapter 45, sec. 1649b-1, to sec. 1649b-5, Ky. Stats., 1922, commonly known as ''The Anti-Sweating Act.''

Section 1649b-1 of the statute, *supra,* declares:

''That what is commonly known as 'sweating' is hereby defined to be the questioning of a person in custody charged with crime in an attempt to obtain

information from him concerning his connection with crime or knowledge thereof, after he has been arrested and in custody as stated, by plying him with questions, or by threats or other wrongful means, extorting from him information to be used against him as testimony upon his trial for such alleged crime.''

In Commonwealth v. McClanahan, 153 Ky. 412, which was the first case involving a construction of the statute, *supra,* decided by this court, its constitutionality was sustained and its object declared to be the supression of the modern unlawful methods too frequently employed by detectives and arresting officers for extorting from persons under arrest, charged with crime, confessions of their guilt thereof. Hence, in furtherance of this object, the statute, as shown by its language and said in the opinion of the court, ''provides a rule of evidence and procedure by which the courts of the state are to be governed, and prescribes punishment for those who employ the methods therein condemned. . . . ''

As the case of McClanahan v. Comlth., *supra,* is among those cited by counsel for appellant as supporting his contention that the evidence complained of should not have been permitted to go to the jury, it is sufficient to say that while in that case a ruling of the trial court, excluding certain evidence offered by the Commonwealth of a confession of guilt made by the defendant to a detective in what was called the ''detective room,'' was approved by this court, the reasons given by the court therefor cannot be found in the case at bar. Those reasons are set forth in the opinion of the court as follows:

''It is manifest from Sheeran's (the detective's) testimony that he deliberately planned to entrap appellee into a confession of guilt, and the circumstances under which the confession was obtained show that it resulted from methods both artful and deceptive, that must have so agitated the mind of appellee and aroused his fear as to have a coercive effect; therefore the confession was not voluntary. The course of interrogation followed by Sheeran, the character of the questions propounded, the artful laying of the plan in the outset to contradict him,

and the seductive suggestions throughout the interviews tending to convince appellee of the necessity of his making a confession and of the hopelessness of his denial of guilt were sufficient to break down his power of resistance and leave him at the mercy of the inquisitor. The act, *supra,* was intended to prevent and destroy just such methods as were here employed and to punish those who employ them. We do not mean to hold that a voluntary confession may not be made by one charged with crime and under arrest, for such confessions have often been admitted and will yet be admitted by the courts as competent, but it should come from the defendant under such circumstances as show it to be made of his free will and with full and perfect knowledge of its nature and consequences, free from the dictation or coercion of others.''

It is patent from the language of the statute and the construction given it by this court, that a confession by a person of his guilt of a crime with which he is charged, or a disclosure by him of information that will tend to establish his guilt thereof, though made or disclosed after his arrest and to an officer having him in custody, may be used as evidence against him on his trial for such crime, provided such confession or disclosure is not obtained by ''extorting'' it from him by some one or more of the methods condemned by the statute.

We do not agree with counsel for the Commonwealth, that in order to render incompetent evidence of a confession made by a defendant of his guilt of a crime with which he stands charged, the confession must have been extorted from him by violence. While the word ''extorting'' may, by implication, be given a meaning that would include a result attained by violence, we think the word, as employed in the statute, *supra,* is used in the sense of ''compelling'' or ''coercing'' from the person charged with crime the confession or information intended to be used as evidence of his guilt, which may be accomplished by any means that would serve to overcome his power of resistance, or make the confession or admission other than a voluntary one. Our consideration of the evidence contained in the record has convinced us that the admissions made by the appellant and his codefendants of his and their guilt of stealing Bond's auto-

mobile were not procured by any of the methods denounced by the "anti-sweating" statute. There is no evidence whatever conducing to prove that there was any persuasion, compulsion or extortion, either by the "plying" of questions, threats, offer of immunity from prosecution, promises of reward, or other wrongful means, employed by the officers or others to obtain the confessions. It is apparent from the evidence that the appellant and his codefendants realized that they were "caught" and voluntarily related their participation in the theft of the automobile. All were present and each of them in the presence of the others frankly told of his and their participation in the theft of the automobile. Indeed, there was no disagreement among the three accused of the crime, even as to the details attending its commission. And each of them admitted that they went to Owen county to "ditch" an Essex car that its owner might collect insurance he had obtained upon it, and while there they took Bond's Ford coupe, because they (the three) had been promised $50.00 for each Ford coupe they would steal and deliver in Campbell county to a person named by them. It may be conceded that these confessions were invited by an inquiry or inquiries from one or more of the officers made, doubtless, for the purpose of ascertaining what explanation the accused might be willing to make of their possession of the stolen car. But there was not the slightest evidence tending to show that any question asked them, or thing done by the officers or others, was of such a nature as to compel an unwilling admission of guilt by the appellant or his codefendants.

The competency of evidence of a confession of guilt, made as were those of the appellant and his codefendants in this case, has been recognized by this court in numerous cases, some of which are here cited: Comlth. v. Long, 171 Ky. 133; Wellington v. Comlth., 158 Ky. 161; Garrison v. Comlth., 169 Ky. 188; Dorsey v. Comlth., 158 Ky. 447; Boyd v. Comlth., 194 Ky. 73; Coates v. Comlth., 191 Ky. 521; Comlth. v. Harris, 177 Ky. 607; Dials v. Comlth., 192 Ky. 440.

The cases cited in the brief of the appellant's counsel as supporting their objections to the competency of the evidence in question are not in conflict with those cited in the opinion. While in a majority of them the evidence of the defendant's confession of guilt admitted or offered in the trial court, was held incompetent, it was

for the reason that the confession was wrongfully obtained by one or more of the methods denounced by the common law, or the anti-sweating statute. This is notably true of the case of Owsley v. Commonwealth, 125 Ky. 384, mainly relied on by counsel, in which there was reversal of the judgment of conviction because of error committed by the trial court in admitting evidence of a confession of guilt made by an ignorant colored boy between 11 and 12 years of age, under compulsion from three white men after they had taken him alone to a room for the purpose of obtaining it. A reading of the court's opinion in that case will make obvious its inapplicability, as authority, to the case at bar.

It follows from what has been said that we find no error in the admission by the trial court of the evidence proving the two confessions made by the appellant of his, Gaylog's and Cook's guilt of the crime charged in the indictment, or in the admission by that court of the evidence proving the like confessions of his and their guilt thereof made by each of the latter. For what each of the three in admitting his own guilt said of the participation of the other two in the commission of the crime was competent, because voluntarily related by each in the presence of the others and voluntarily assented to at the time by each of the latter. It is manifest from the evidence of the confessions of the three defendants that they did not disagree in any substantial particular. The confessions of Gaylog and Cook were in full accord with those of the appellant, Sutton, as to his and their participation in the commission of the crime and were acquiesced in by him. They were, therefore, corroborative of his own admissions of his guilt, as his confessions were corroborative of theirs; and both his and their confessions were amply corroborated by additional evidence appearing in the record.

In 16 Corpus Juris 658, the competency of such evidence as we are here considering is recognized, and the rule for determining its admissibility declared as follows:

"Statements or declarations by one conspirator or codefendant, although made after the termination of the conspiracy, are competent against another conspirator or codefendent where they were uttered in his presence and he assented thereto; or where,

in some other way, he acted in a incriminatory manner in connection with the statement. The necessary assent may be evidenced by a direct admission of the truth of the statement; or by a failure to deny its truth where the circumstances are such as to make it reasonable to suppose, that if the statement were untrue, he would have denied it.''

In the case at bar a stronger reason appears for declaring competent the testimony in question than can be found in the statement, *supra,* which is, that in addition to giving his assent to the statements made in his presence by each of his codefendants admitting his and their guilt of the crime charged, he, by like statements made at the same time in their presence, admitted his own guilty participation in its commission. The competency of such evidence has repeatedly been recognized by this court. Bowlin v. Comlth., 195 Ky. 600; Lyon v. Comlth., 29 Ky. L. Rep. 1020; Wilson v. Comlth., 166 Ky. 301.

As we view the evidence, the failure of the trial court to instruct the jury in the language of section 241, Criminal Code, substantially declaring that one charged with crime cannot be convicted upon the uncorroborated testimony of an accomplice, did not, as insisted by counsel for the appellant, constitute reversible error.

In Bouvier's Law Dictionary (Ed. 1897), page 1113, the word ''testimony'' is thus defined:

''The statement made by a witness under oath or affirmation.''

In Words and Phrases, vol. 8, page 933, it is said:

''The term 'testimony' is defined to be words uttered by witnesses in court.''

In this case none of the testimony furnishing evidence of the appellant's and his accomplices' confessions of his and their guilt of the crime charged was given by the accomplices, Gaylog and Cook, or either of them, but the whole of such testimony came from witnesses, strangers to the crime, to whom the confessions were voluntarily, and without disagreement as to details, made by the appellant and the accomplices when all were together. Manifestly the section of the Criminal Code *supra,* can have no application to the testimony given by the officers and others to whom the confessions of guilt

were made by the appellant and his codefendants. Its provisions, as held in Wilson v. Comlth., *supra*, apply only "when the testimony of an accomplice is given in open court."

We are unable to sustain the contention of appellant's counsel that the trial court erred in allowing evidence of the admissions made by appellant and his codefendants that their trip to Owenton on the night the Ford coupe of Bond was stolen, was for the double purpose of "ditching" the Essex car in which they rode there that the owner might obtain the insurance on it, and stealing another car for which they were to be paid upon their return to Newport. The evidence served to connect the destruction of one of the cars with the stealing of the other, to identify the actors in the two transactions as the same and prove the felonious intent with which the Bond car was taken. Bishop's New Criminal Procedure, vol. 1, sec. 1126; Greenleaf on Evidence, vol. 1, sec. 53; vol. 3, sec. 15; O'Brien v. Comlth., 15 Ky. 608.

The appellant's complaint of the trial court's refusal to direct a verdict of acquittal requires no response at our hands, as it is obviously without merit.

His final contention as to the alleged misconduct of the Commonwealth's attorney in argument to the jury, and failure of the court to exclude that part of his argument, constituted reversible error cannot prevail. The argument consisted of statements intended to show the effect that should be given by the jury to the plea of guilty entered by Gaylog on his trial, in determining the guilt or innocence of the appellant. Under other circumstances than those appearing in the case, the statements might and, doubtless, would have been prejudicial to the substantial rights of the appellant; but, for the reasons presently stated, we cannot believe that such was their effect upon his rights.

While these statements of counsel in argument seem to have been provoked by references to Gaylog's guilt as chief actor in the commission of the crime charged and his influence over the appellant, made in argument by appellant's counsel, they were improper and should have been excluded by the court, but its failure to do so does not afford cause for the reversal of the judgment. In view of the overwhelming proof furnished of the appellant's guilt by the evidence appearing in the record, and

the fact that he received the minimum punishment therefor allowed by the law, it goes without saying that he could not have been prejudiced in any substantial right by the conduct and statements of the Commonwealth's attorney complained of.

Wherefore, the judgment is affirmed.