## Webb, et al. v. Commonwealth.

(Decided May 31, 1927.)

### Appeal from Kenton Circuit Court.

1. Indictment and Information.—One indicted along with codefendants only as principal may be convicted as aider and abettor.

2. Criminal Law.—Evidence held to show that defendants' confessions were extorted from them, within meaning of Ky. Stats., section 1649b-1, by prolonged and menacing questioning and information that codefendant had been badly beaten in course of third degree.

3. Criminal Law.—Admission of confession extorted from defendant, to whom other evidence pointed unerringly as participant in holdup, held not prejudicial error.

4. Criminal Law.—Admission of confession, extorted from defendant, of whose complicity in holdup there was almost no other evidence, held prejudicial error, requiring reversal of his conviction.

HARVEY MYERS and ALEX HOWARD for appellants.

FRANK E. DAUGHERTY, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—
Affirming in part and reversing in part.

In the month of January, 1926, the Boothe Memorial Hospital in Covington was in the course of erection. The appellants were employed by one of the contractors working on that building. Robert Webb was working on a hoisting engine, and Walter Webb was doing general work about the building. On Saturday, January 23, 1926, two of the contractors went to bank for the purpose of procuring money for the pay rolls. They had Walter Webb drive them in a Ford coupe. On their way back from the bank with the money, and just before they reached the hospital, Walter Webb turned the automobile suddenly into an alley, and there Alonzo Mason and Wade Edwards held up the two contractors and took from one of them the money he had for his pay roll. In the excitement attending the robbery of this contractor, the other contractor made his escape, thus saving his money. Mason and Edwards then seized the Ford coupe and made their escape. They were later arrested.

The police department of Covington, being convinced that Walter Webb was involved in this holdup, shadowed his home the rest of that day, and about 4 o'clock on Sunday morning following entered it and there arrested him and his brother, Robert. Robert Webb during all of the Saturday morning when this robbery occurred had never left his position of duty at the hoisting engine. When Walter Webb was arrested, there was found under his pillow a large sum of money, and in the clothes press in his room two revolvers of the same kind used by Mason

and Edwards in the holdup. One of these revolvers, it is shown, had been given some two weeks prior thereto by its owner to Robert Webb for the purpose of sale. Both Walter and Robert were arrested, taken to police headquarters, separated, and then for over two hours each was plied with questions by different members of the police department. During all of this time, Robert Webb stoutly maintained his innocence. At 7 o'clock these boys were taken to the county jail, but later on during the morning they were returned to the police headquarters, again separated, and each of them again subjected to another hour or more of constant interrogation. All this is shown by the testimony of the police officers themselves and the testimony of Robert Webb and Walter Webb on this score may be ignored. After this grilling of some four hours, both of these boys finally confessed to having had a share in this holdup; that of Robert Webb being the planning of the job. Robert Webb says that he confessed on the understanding that all the blame for this holdup was to be put on his shoulders and that he did this to save his brother, who was married and had a wife and child to support. This understanding is vigorously denied by the commonwealth's attorney. On the joint trial of both the Webbs, Mason, and Edwards, the last named, at the close of the commonwealth's case, changed his plea to that of "guilty," and the jury found both Webbs and Mason guilty. From the judgment entered on that verdict, the Webb boys alone appeal.

For reversal, they insist that the evidence contained in their respective confessions should not have been admitted. Robert Webb also insisted that, since he had been indicted along with his codefendants only as a principal, the court should not have instructed the jury that it could convict him as an aider and abettor. So far as this contention of Robert Webb is concerned, there is no merit in it. This matter was disposed of in the case of Deaton v. Commonwealth 211 Ky. 651, 277 S. W. 1001.

Passing now to the contention of both of the Webbs, we find that section 1649b-1 of the Kentucky Statutes provides:

> "That what is commonly known as 'sweating' is hereby defined to be the questioning of a person in custody charged with crime in an attempt to obtain information from him concerning his connection with crime or knowledge thereof, after he has

been arrested and in custody, as stated, by plying him with questions or by threats or other wrongful means, extorting from him information to be used against him as testimony upon his trial for such alleged crime."

In the case of Sutton v. Commonwealth, 207 Ky. 597, 269 S. W. 754, in construing this section of the Statutes, we held that the mere questioning of an accused is not denounced by this section, but if the plying of the accused with questions becomes so acute as to amount to an extortion from him of the information given by reason of the questioning, then it is within the prohibition of this section. No one can read this record without being convinced that the confessions obtained from these Webb boys were extorted from them within the meaning of the opinion in the Sutton case. True it is that Robert and Walter Webb admit that when questioned by the commonwealth's attorney they were treated by him most courteously, but it must be remembered that they had been subjected to questioning from 4 to 7 in the morning and for almost an hour later in the day before the commonwealth's attorney took up the task. There is no denial in this evidence that the Webb boys had been informed that "their codefendant Edwards had been badly beaten in the course of a third degree administered by the police." Whether Edwards had been so beaten or not is beside the point. If the Webb boys reasonably believed that he had, it undoubtedly had an effect on their mental attitude when they, in turn, were subjected to the prolonged questioning they were by the police department. Although the members of this department insist on the Chesterfieldian courtesy with which they treated these accused, yet the chief of police admitted that he had called Robert Webb, in the course of his examination, several times, a "damn liar," a straw which shows which way the wind was blowing, and convinces us that the Webbs told the truth when they said that the method of the questioning of them by the police department was very menacing. This prolonged and menacing questioning, coupled with the state of mind of these Webb boys, occasioned by their information concerning what had happened to Edwards, is quite convincing that their resultant confessions were obtained in such manner as to amount to an extortion from them of the information contained in the confessions within the meaning of this

section of the Statutes as construed in the Sutton case, supra. It follows that neither confession should have been admitted against either of these appellants.

However, the evidence in this record other than that of the confession of either of the appellants points so unerringly to Walter Webb as a participant in this holdup that we cannot say that the admission of his confession was prejudicial. As to Robert Webb, however, there was almost no evidence, except his confession, that he had anything to do with this holdup. The admission of his confession was, under such circumstances, plainly prejudicial, for which reason the judgment as to him will have to be reversed.

The judgment as to Walter Webb is affirmed, and as to Robert Webb it is reversed, with instructions to grant him a new trial in conformity with this opinion.