# McClain v. Commonwealth.

Nov. 8, 1940.

Flem D. Sampson, Judge.

360

William Lewis & Son for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

The appellant, William McClain, a negro, was convicted by a jury in the Whitley Circuit Court of the crime of malicious shooting and wounding with intent to kill. His punishment was fixed at five years' confinement in the penitentiary and he seeks to reverse the judgment entered on the verdict because: (1) There is a variance between the accusatory and descriptive parts of the indictment; (2) incompetent evidence was admitted against him; (3) the instructions were erroneous.

The accusatory part of the indictment charged defendant with the offense of "malicious shooting and wounding with intent to kill," while the descriptive portion thereof charged defendant "did unlawfully, wilfully, feloniously and maliciously shoot at and wound Caleb Miracle * * * with a pistol * * * from which shooting and wounding death did not ensue." Relying upon Section 124 of the Criminal Code of Practice, appellant's counsel argue that this is such a variance as to be fatal to the indictment. This identical question was before us in the very recent case of Smith v. Com., 284 Ky. 80, 143 S. W. (2d) 859, and after fully reviewing and discussing the authorities we held there that an indictment charging defendant in the accusatory

part with malicious shooting and wounding with intent to kill was not at variance with the descriptive part alleging defendant feloniously and maliciously shot and wounded another person and from which the words "with intent to kill" were omitted.

The testimony for the Commonwealth was to the effect that in Corbin on the night of December 11, 1938, defendant with some other men, both white and colored, entered the cafe of a white woman, Sarah Pierce, between seven and eight o'clock. They consumed some soft drinks and seven of them drank a half pint of whisky while there. Defendant asked Miss Pierce if she were "putting out," at which she became incensed and at which her uncle, Caleb Miracle, took exception, and defendant asked the latter to step outside if he did not like what he had said. While Miracle and defendant were in front of the cafe, but not engaged in any difficulty and apparently on friendly terms, a Deputy Sheriff, Ben Pridemore, wearing an officer's uniform, approached them. Pridemore testified the defendant was staggering drunk and he told him he was under arrest for drunkenness, at which defendant stepped back, pulled his hands from his pockets and started shooting. None of the shots took effect on Pridemore, but four of them hit Miracle, who was standing at the side of the officer. Pridemore then fired two shots at defendant, neither of which found their mark.

Defendant denied "propositioning" Miss Pierce or that he was drunk, or even drinking. He testified that while he and Miracle were standing on the street engaged in friendly conversation, Pridemore came up to him saying, "Boy, I'm looking for you," and started searching him. The officer turned, whereupon defendant eased his pistol out of his pocket, dropped it by the side of his leg and kicked it into the dark. Pridemore then shot at him a couple of times; he picked up his pistol and returned Pridemore's fire but missed him and wounded Miracle. After the shooting, defendant escaped by running through the cafe, and when arrested a few hours later on the outskirts of Corbin he denied doing the shooting, but admitted it when he arrived at the jail. The following day the county attorney with a stenographer visited defendant in jail, asked him many questions concerning the shooting, which with defendant's answers were taken by the stenographer.

Counsel for defendant insist it was highly prejudicial to their client that Miss Pierce was permitted to testify that he had insulted her. We cannot agree with them that this evidence was inadmissible. It had direct bearing on defendant and Miracle leaving the cafe and on their being together on the street at the time of the shooting. Although Miss Pierce testified she did not detect that defendant was under the influence of liquor while in the cafe, yet her testimony of the improper remark made to her by him might have had considerable weight with the jury as to whether or not defendant was drunk as testified to by Pridemore. We conclude Miss Pierce's testimony was competent.

Miracle was not introduced as a witness until the Commonwealth put him on in rebuttal, when he testified defendant made the insulting remark to his niece which he resented and defendant invited him outside. While Miracle's testimony was in chief and should not have been introduced in rebuttal, yet Section 224, Criminal Code of Practice, as construed by us, allows the court considerable latitude in permitting evidence to be introduced in rebuttal which should have been offered in chief, and it is only where the court has abused such discretion to the prejudice of the substantial rights of the defendant that it becomes reversible error, Allen v. Com., 176 Ky. 475, 196 S. W. 160; Fox v. Com., 248 Ky. 466, 58 S. W. (2d) 608. We cannot see how the evidence of Miracle could have prejudiced defendant when it was introduced in rebuttal rather than in chief.

It is further argued by defendant that it was reversible error for the Commonwealth to introduce against him any part of the statements he gave the county attorney when the latter visited him in jail, contending such information was obtained in violation of the anti-sweating statute, Section 1649b-1 et seq., Kentucky Statutes. The county attorney and the stenographer were introduced in rebuttal and the only parts of defendant's statements they testified to were, that he said the officer accused him of being drunk when he attempted to arrest him; as to how many shots defendant fired; what disposition he made of his pistol after the shooting was over; and as to which one of them made the first move to draw his pistol. Defendant does not contend the county attorney offered him any inducements or immunity or made any threats against him or

mistreated him in any manner in obtaining these statements, nor does he deny that the statements he gave the county attorney were freely or voluntarily made on his part. The defendant was asked 160 questions by the county attorney, but as he answered them willingly and voluntarily and as there was no evidence of threats, inducements or coercion, or of any effort to extort information from the defendant, the anti-sweating statute has no application. It is not the extent of the questioning of the defendant which is prohibited by the statute, but the manner in which it is conducted. A defendant in custody may freely and voluntarily answer many questions and in no manner be "sweated." On the other hand, a single question accompanied by a threat may violate the statute. The "plying with questions" forbidden by Section 1649b-1 means "the persistent and repeated propounding of inquiries to elicit a desired answer, carried to such an extent that the prisoner feels required to answer as the questioner wishes in order to escape from the pressure." Bennett v. Com., 242 Ky. 244, 46 S. W. (2d) 84, 85; Caruth v. Com., 251 Ky. 143, 64 S. W. (2d) 495. While 160 questions were asked defendant, there is no testimony that any of them were repeated or that there was any particular fact the county attorney attempted to obtain from defendant or to have him admit. Also, there is no evidence of threats, inducements or coercion, nor of any effort to extort information from the defendant. It was written in Sutton v. Com., 207 Ky. 597, 269 S. W. 754, and in Webb v. Com., 220 Ky. 334, 295 S. W. 154, that it was not the questioning of the accused which is denounced by the statute but it is plying him with questions until the pressure becomes so acute as to amount to extortion. The version of the shooting as testified to by defendant on his trial differs but little from what he told the county attorney, and we are clearly of the opinion that such testimony could not have been prejudicial to defendant even if it had been obtained in violation of the statute, which it was not.

Complaint is made of the first instruction that it did not leave to the jury to determine whether or not defendant was drunk in the officer's presence, thereby giving him the right to arrest defendant, but the instruction assumes such to be the fact. According to defendant's testimony, when the officer started to arrest him

he made no resistance but merely attempted to throw away his pistol, and the officer turned away and without provocation started shooting at him. If his testimony is accepted, he had a clear case of self-defense and it was immaterial as to whether or not the officer was justified in attempting to arrest him for drunkenness in his presence. We can see no prejudicial error in this first instruction.

Defendant's criticism of the self-defense instruction is well taken, as it omitted to tell the jury he was justified in shooting at Pridemore if he believed in the exercise of a reasonable judgment it was necessary to so do in order to avert the danger, real, or to defendant apparent. The instruction as drawn told the jury to acquit defendant if "it was necessary in order to protect himself to shoot, etc.," and it omitted to tell the jury defendant was justified in shooting if in the exercise of a reasonable judgment it was necessary so to do to avert the danger, real, or to defendant apparent. Thus the instruction is erroneous in making the jury and not the defendant the judge of whether or not he was in danger at the time of the shooting and whether or not it was reasonably necessary for him to shoot in order to avert the danger, real, or to him apparent. We have many times written this was error. Burton v. Com., 66 S. W. 516, 23 Ky. Law Rep. 1915; Martin v. Com., 78 S. W. 1104, 25 Ky. Law Rep. 1928; Hoover v. Com., 192 Ky. 490, 233 S. W. 1042. However, this error was corrected by a second self-defense instruction immediately following the first one on the subject and connected therewith by the correlative "or" which specifically told the jury to acquit defendant if it believed from the evidence Pridemore shot first and defendant returned his fire. This second instruction on self-defense, while not correct, was more favorable to defendant than to which he was entitled and cured the error in the first self-defense instruction. Instructions are considered as a whole and an error or omission in one may be supplied in another, Stanley's Instructions to Juries, 1060, Section 801; Calico v. Com., 145 Ky. 641, 140 S. W. 1036; Voils v. Com., 229 Ky. 305, 17 S. W. (2d) 238.

Finding no error in the record which in our judgment was prejudicial to defendant's substantial rights, the judgment is affirmed.