## Deaton and Boggs v. Commonwealth.

(Decided June 3, 1927.)

## Appeal from Perry Circuit Court.

1.  Indictment and Information.—Criminal Code of Practice, section 124, requiring indictment to be direct and certain as regards the offense charged, should be read with section 122, subsec. 2, providing that the indictment must contain a statement of acts constituting the offense in ordinary and concise language with such certainty as to enable the court to pronounce judgment.
2.  Indictment and Information.—"Accusatory part" of indictment is that part where the offense is named.

3.  Indictment and Information.—The statement of acts constituting offense in ordinary and concise language, as required by Criminal Code of Practice, section 122, subsec. 2, is contained in that part of the indictment designated as the "descriptive part."

4.  Indictment and Information.—Indictment is fatally defective unless it both names the offense in the accusatory part, with certainty required by Criminal Code of Practice, section 124, and states the acts constituting the offense in the descriptive part with sufficient certainty to enable the court to pronounce judgment, as required by section 122, subsection 2.

5.  Indictment and Information.—Indictment charging defendants in accusatory part with "confederating" held demurrable for lack of certainty, required by Criminal Code of Practice, section 124, requiring indictment to be certain as regards offense charged, although language in descriptive part of indictment was broad enough to include offense, either under Ky. Stats., section 1223, prohibiting confederating and banding together to intimidate or do any felonious act, or section 1241a-1, prohibiting banding together to disturb, injure, or rescue persons.

6.  Courts.—Objection that at times of indictment and trial there was no legal term in Perry circuit court, and entire proceedings were therefore void, held without merit, since emergency clause in Acts 1926, c. 54, changing time of holding Perry circuit court, is invalid and prior April term was therefore not repealed.

SAUFLEY & WARD for appellants.

F. E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellants and defendants below, Deaton and Boggs, were convicted in the Perry circuit court of either the statutory crime denounced by section 1223 or that denounced by section 1241a-1 of the Kentucky Statutes, but of which one they were accused and convicted cannot be ascertained from the indictment, since its language in the description of the offense, of which defendants were accused, is broad enough to include the one denounced by either of those sections. Their punishment was fixed at confinment in the penitentiary for one year each, and, their motions for a new trial having been overruled, they prosecute this appeal, urging as grounds for reversal (1) that their demurrer filed to the indictment should have been sustained, and (2) that at the times they were indicted and tried there was no legal term of the Perry circuit court, and their motions to quash the indictment, made before the trial, and to set aside the verdict

against them, made after the trial, should have been sustained on the ground that the entire proceedings against them were void because at no step in the prosecution was there a legal term of the Perry circuit court in session. The two grounds will be disposed of in the order named.

1. The accusatory language of the indictment says:

"The grand jury of Perry county, in the name and by the authority of the commonwealth of Kentucky, accuse Matt Deaton and James Boggs of the crime of confederating, committed in the manner and form as follows, to wit."

The immediately following description charges facts that would authorize a conviction under either one of the two sections of the Statutes, supra, but it is not necessary for us to determine whether the language of the indictment that is not common to both sections would be sufficient to render it demurrable, or whether such language could be treated as surplusage and the indictment held good for whichever offense the testimony established, provided it was good in other respects. We will therefore dispose of the case without determining that question.

Section 124 of the Criminal Code of Practice says:

"The indictment must be direct and certain, as regards  .  .  .  the offense charged."

Subsection 2 of section 122 of the same Code prescribes how the indictment shall describe the offense of which defendant is accused, by saying that:

"The indictment must contain  .  .  .  a statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended; and with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the right of the case."

The two sections therefore should be read together, and they mandatorily require that an indictment "must be direct and certain" as to "the offense charged" (section 124), and then it *must* contain "a statement of the acts constituting the offense," etc. The first requirement is contained in what we have heretofore held to be the

*accusatory* part of the indictment, which is that part where the offense is named, and the second requirement should appear in that part of the indictment designated as its *descriptive* part, and we have uniformly held that unless the indictment contained the required certainty prescribed by both of the sections, supra, it would be fatally defective. In other words, a good statement of the offense in the *descriptive* part of the indictment will not supply the failure to *name* the offense in the *accusatory* part of the indictment, and, vice versa, a correct naming of the offense in the *accusatory* part of the indictment will not supply a defective statement of the acts constituting the offense in its *descriptive* part.

The exact question was before us in the comparatively recent case of Elliott v. Commonwealth, 194 Ky. 576, 240 S. W. 61, and in that opinion our above interpretation of the two sections of the Criminal Code, supra, was indorsed as the true rule. In that opinion prior cases from this court were cited and extracts from those former opinions to the same effect were inserted with approval. Some of such prior cases were Brooks v. Commonwealth, 98 Ky. 143, 32 S. W. 403, 17 Ky. Law Rep. 698, Commonwealth v. Reynolds, 4 Ky. Law Rep. 623, Commonwealth v. Castlemen, 8 Ky. Law Rep. 608, Commonwealth v. Tobin, 140 Ky. 261, 130 S. W. 1116, and Bennett v. Commonwealth, 150 Ky. 604, 150 S. W. 806, 43 L. R. A. (N. S.) 419. The correct conclusion, as gathered from our opinions and from established rules of Criminal Procedure, was thus stated in the Elliott opinion:

> "It has never been held in any case that certainty in stating the offense charged in an indictment would dispense with the necessary and required certainty in stating the particular circumstances of the offense charged; nor that certainty in stating the particular circumstances constituting the offense charged would dispense with the required certainty in stating the offense of which the defendant is accused."

Measured by the rules of practice as so announced, the question is, did the indictment in this case comply therewith?

It will be observed that in the accusatory part of the indictment the only supposed offense with which defendants were accused was that of "confederating." Mr.

Webster, in the latest edition. of his International Dictionary, defines the word "confederate" as meaning "to unite in a league; to join in a mutual contract or covenant; to band together." There was no common-law offense so far as we are aware, against *confederating,* which, after all, is only an agreement between two or more persons and which may or may not be unlawful according to the subject matter of the agreement. However, if the thing *agreed* to be done, although unlawful if done, would not necessarily be unlawful if nothing was done or attempted to be done in execution of the agreement. We have no statutory offense with reference to "confederating" except those contained in the two sections of the statute, supra, and neither of them attempts to punish such agreements, unless they have for their purpose the doing of one of the things enumerated in the statute (section 1241a-1), or unless, as prescribed in section 1223, the agreement is followed by going "forth armed  or disguised for the purpose of intimidating or alarming," etc. So that, confederating only for certain denounced purposes, or followed by certain denounced acts, constitute the offenses denounced by those sections, and unless such purposes or such acts are intended, or are carried out by the confederates, no offense either at common law or under either of the statutes has been committed. Clearly, therefore, when the indictment in this case accused defendants of simply "confederating," it did not name any offense denounced by law, and under the principles hereinbefore discussed the demurrer thereto should have been sustained.

It is true that in some cases, two of which are Meredith v. Commonwealth, 199 Ky. 544, 252 S. W. 894, and Overstreet v. Commonwealth, 147 Ky. 171, 144 S. W. 751, it was held that the requirements of the two sections of the Criminal Code, supra, were not literally followed, in that the offense named in the accusatory part of the indictment was not technically correct. But in all of such opinions, including the two referred to, it was held that the language employed in naming the offense, when construed in connection with the statute denouncing it, substantially named the offense and therefore complied with the requirements of section 124, and neither of those opinions attempted to dispense with the two distinct requirements of the two separate sections of the Criminal Code as hereinbefore pointed out.

Ground (2) urged for reversal was adversely disposed of by us in the recent case of McIntyre v. Commonwealth, — Ky. —, — S. W. —, decided on May 17, 1927, wherein it was held that the *emergency* clause in the 1926 act (Acts of 1926, c. 54, p. 168) changing the time of holding the Perry circuit court, was invalid for reasons stated in that opinion, and because thereof that act did not take effect until 90 days after the adournment of that session, and, consequently, the prior April term of the Perry circuit court was not repealed by that act. That being true, this ground for reversal is without merit and cannot be sustained.

For the reasons stated in the discussion of ground (1), the judgment is reversed with directions to grant the new trial and to sustain the demurrer to the indictment, and for proceedings consistent with this opinion; other questions not being passed on.