## Kilbourn v. Commonwealth.

(Decided October 21, 1927.)

### Appeal from Perry Circuit Court.

1. Courts.—Holding of April term of Perry circuit court, at which indictment was returned, held authorized by law.

2. Homicide.—Evidence in murder trial held to support conviction of manslaughter on theory that defendant was present and aiding and abetting one who did shooting while their passions were still heated from recent encounter with deceased.

3. Criminal Law.—In murder trial, deceased's dying statement and testimony of eyewitness held sufficient corroboration of accom-

plice, who did shooting, to sustain conviction of aider and abettor for manslaughter.

SAUFLEY & WARD for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER DRURY—Affirming.

Upon his trial under an indictment for murder, Nat Kilbourn was convicted of manslaughter and his punishment fixed at two years' confinement in the penitentiary, the reversal of which judgment he is asking upon two grounds: The first is that the court erred in overruling his motion to quash the indictment because it was returned at the April term of the Perry circuit court, it being Kilbourn's contention that there was no law for the holding of such a term, but we have made an adverse disposition of this same question in the recent cases of Deaton et al. v. Commonwealth, 220 Ky. 343, 295 S. W. 167; and McIntyre v. Commonwealth (Ky.) 297 S. W. 931. That brings us to his second ground for reversal, which is that the verdict is so much against the evidence as to show that it was the result of passion or prejudice, and the disposition of this question requires a review of the evidence.

Nat Kilbourn was a deputy sheriff, and he testified that on one Saturday afternoon he was in the back room of Lewis' Store, in or near the town of Viper, when Mose Collins came up to him and told him that the Kilbourn boys had come by there and jumped on him with a pistol and had threatened to kill him and Nat Kilbourn. The defendant said to Collins, "Come back in here and shut your mouth." Soon Bill Kilbourn came in, drew a .38 special revolver, and advanced on Mose Collins, cursed him, and used an insulting epithet. Collins drew his pistol, whereupon the defendant grabbed both their pistols and disarmed them. Bill Kilbourn then went into the main store where Grant Fields, the deceased was, and soon returned with a .32 special, and Pete Kilbourn then came in with a German Luger, put it to defendant's breast, and, cursing him, said, "Now, give Bill his gun back." He made the defendant put Bill Kilbourn's pistol back in Bill's holster. Mose Collins testified that

after the defendant, Nat Kilbourn, did this, he remarked: "We will just shoot it out with them." Will Kilbourn, Grant Fields, and the remainder of his party then rode away. Nat Kilbourn, Hardy Kilbourn, and Mose Collins then left and, according to Mose Collins, as they walked through the ball ground, Nat remarked: "Four or five of them sons-of-bitches will jump on a man and punch him around with a pistol. We will catch them down here one or two at a time, and we will kill them." Mose Collins testified that he and Nat Kilbourn had been up the creek that day to get some liquor. They now went to Nat Kilbourn's house, where they left the liquor and started back to Viper, where Hardy Kilbourn was going to catch a train, and on the way back, according to Mose Collins, they had to cross a creek, and when they got across the creek, Nat said: "Get your pistols out; I see one of them fellows coming." Presently Grant Fields came up, and Mose Collins asked him what made him be in that crowd a while ago. Fields looked the crowd over and saw they were armed, whereupon Mose Collins began shooting at Fields, inflicting upon him wounds from which he died on Tuesday thereafter. There was no evidence that Nat Kilbourn fired a shot. Nat Kilbourn's account of it is that he, Hardy, and Collins had started to Viper when they met Grant Fields; that they spoke to him and he spoke to them. Whereupon Mose Collins said, "What made you do like you did to me?" Fields responded, "I had nothing to do with that." Collins then began shooting. Nat Kilbourn claims he went back and arrested Collins and deputized Hardy Kilbourn to take him to town. He then went to Grant Fields and with the aid of others who came up took him to the home of a neighbor. The dying statement of Fields was that Mose Collins, Nat Kilbourn, and Hardy Kilbourn were standing by the side of the road with their guns in their hands as he rode by; that Nat Kilbourn and Mose Collins threw their guns on him and Mose shot him. In another statement he said that after he fell off his horse Nat Kilbourn came to him and searched him.

Mrs. McIntosh, who lived near the scene of the shooting, said she saw Grant Fields riding along the road and saw these parties on the roadside.. She never heard anything said, but just when Grant Fields rode up the shooting began.

The meeting at Lewis' store occurred about 2 o'clock. This shooting occurred about 2:30. The defendant insists that there is no evidence to sustain a conviction for manslaughter, that if the evidence for the commonwealth is to be believed, this was a case of murder, and if the evidence for the defendant is to be believed, that he had nothing to do with the shooting whatever; but the jury may have concluded that the passions of Nat Kilbourn and Mose Collins were aroused by the happening at the store; that by chance they did meet Grant Fields, before their passions had time to cool, and that while their passions were then still heated from the recent encounter, the shooting occurred, and that while Nat Kilbourn did no shooting, yet he .was present, aiding and abetting the man who did, and if the jury so believed, that would support their finding. No objection was made to the instruction on manslaughter, and if the jury took this view of the case, there is in the evidence abundant support of the verdict. Mose Collins, of course, was an accomplice, but the jury was by appropriate instructions told that a conviction could not be had upon the uncorroborated evidence of Collins. The dying statement of Fields and the evidence of other witnesses to the killing furnish ample corroboration to sustain the verdict.

The judgment is affirmed.