## Sowders et al. v. Commonwealth.

(Decided Jan. 18, 1935.)

C. R. LUKER and GARFIELD R. DRINNON for appellants.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This prosecution is upon an indictment returned by the grand jury of Laurel county, and at the trial of which the appellants and defendants below, Harrison Sowders and Chester Barnett, were convicted of robbing Josh Powers of about $13 in cash by putting him in fear, etc. Sowders was punished by confinement in the penitentiary for seven years, while Barnett's punishment was fixed at three years of like confinement. Their motions for a new trial were overruled, and from the verdict and judgment pronounced thereon they jointly prosecute this appeal, urging by their counsel that the court erred: (1) In overruling defendants' demurrer to the indictment; (2) in the admission of

incompetent testimony; (3) in overruling defendants' motion for a directed verdict of acquittal; (4) in the instructions given to the jury; (5) because the verdict is not sustained by the evidence; and (6) in overruling the motion for a new trial because of newly discovered evidence.

Grounds 3, 4, 5, and 6 are wholly unsupported by the record. The testimony heard at the trial more than preponderated towards establishing the guilt of defendants. The instructions are in accord with the approved form in such prosecutions, and counsel's criticisms of them are but passing grimaces engendered by fear of the law that they embody. They consist in complaints that the court did not properly define the terms "aider" and "abetter," notwithstanding the jury was told that an aider and abetter is one who was "present at the time, near enough so to do and did willfully and feloniously aid, abet, counsel, encourage or commend such taking, stealing and carrying away," etc. It will therefore be seen that ground 4 vanishes in the light of camparison with the record.

Grounds 3 and 5 are directed towards the sufficiency of the testimony to authorize a conviction; but in the light of what we have said, together with a brief statement of the testimony that is to follow, the fallacy of those contentions clearly appears. The newly discovered evidence in support of ground 6 is but remotely probative and is entirely cumulative, even if proper diligence had been shown to discover it, but which is doubtful. At any rate, there is no such showing made in support of that ground as would authorize our interference with the verdict, under an almost endless list of cases that might be cited from this court. There is left, therefore, only grounds 1 and 2 that we deem of sufficient importance to require more extensive notice; but before considering either of them, a brief statement of the substance of the testimony will be made.

The robbery of Powers occurred between 11:30 and 12 o'clock on the night of May 25, 1934, at a rural tourist camp operated by him and whereat he maintained a gasoline station. Within the time mentioned an automobile appeared, and being aroused from his slumbers (he having retired for the night), he arose and dressed himself and appeared on the outside of his dwelling and inquired what the parties desired, when

he was confronted by a pistol in the hands of Sowders, with a demand that he turn over his cash, which he proceeded to do; it consisting of a brand new $5 bill and eight or nine older $1 bills which were creased the long way, and to such an extent that the crease had become somewhat fixed, and was perfectly plain. He likewise noticed, not only the features of Sowders and Barnett who was present with him, but also took cognizance of the automobile in which two ladies were sitting, but neither of them got out of the automobile, nor did they say anything. In his observance he saw a red sign on one of the windows of the automobile having the appearance of a star, but whether it was permanently pasted thereon, or suspended by a string or other attachment, he did not know. Directly after the robbery a Mr. Baker, whom Powers knew, passed going in the same direction that the robbing automobile had departed, and which was towards London, Ky., only about four miles from the scene of the robbery. Powers informed Baker of what had occurred and in doing so gave to him the descriptions that he had observed.

Powers aroused an occupant of one of his camp houses, who had an automobile, and the two soon departed for London in pursuit of the robbers. When they arrived there, they discovered that Baker had already informed the London police of the robbery and delivered to them the message sent by Powers, including the identifying descriptions which were also repeated by Powers to the police, and all of which occurred in a restaurant in London that was·operated by Dan Shophouser. From this restaurant four persons had obtained a quick lunch just prior thereto and had pursued their journey north from London. The police immediately started in pursuit, and some distance from London they came across an automobile fitting the description given by Powers, and which proved to be the same one that stopped at Shophouser's restaurant, where, according to him, the inmates tarried somewhere between five and ten minutes; it being about twenty minutes from the time of the robbery until Baker passed, and a little longer than that until Powers and Mays departed for London. On a window of the automobile was the same red sign testified to by Powers, and about which he informed the police and Baker. The automobile when overtaken was stopped at the side of the road because the driver (Sowders) concluded that one of his tires had gone down, and while inspect-

ing to discover the fact, Barnett and the elder lady occupant were walking up and down the road; the night being a bright moonlight one. Sowders produced, at the request of the officers, the cash he had and which consisted in a brand new $5 bill with a number of other $1 bills containing the same crease lengthwise that Powers had described; but there is some discrepancy in the testimony as to the number of them —some of the witnesses claiming that there were six, and others testifying that there were eight. The prisoner also had some small silver change. Powers positively identified Sowders and Barnett as the two men who robbed him.

The defendants testified that they were on their way from Middlesboro, Ky., to Frankfort, in the same state. They said that they departed from Middlesboro between 9 and 9:30 on that night; stopped at Pineville for some gasoline and at an outlying suburb of Corbin, where they got some soft drinks; and that the next stop they made was at London. They expressly denied stopping at the place of business of Powers, and of course denied that they robbed him. Their explanation of the purpose of their making the trip to Frankfort is vague and uncertain. The same is true as to the reason for making it in the nighttime, while the excuses given by some of the parties as to the reason why they were along are by no means convincing. Sowders stated that he was hired by the elder lady and a codefendant in the indictment, Mrs. Mary Shackelford, to make the trip, and that he carried Barnett along because he was an expert automobile repairer and could repair the automobile if anything happened to it; while the other and younger lady defendent in the indictment, Ira Bussell, as we gather from the record, had in view the visiting of an inmate in the Frankfort Penitentiary. The entire purpose of the trip as well as the time it was undertaken, as given by defendants in the indictment, does not comport with the usual and customary methods of mankind in making such extended trips or in furnishing reasonable motives therefor.

Some contradictions are found in the testimony of the defendants, and no explanation or contradiction is made of the identifying facts to which we have alluded and to which the prosecuting witnesses testified. They, with the positive identification of Powers, were amply

sufficient to authorize a submission of the case to the jury and also to sustain its verdict of conviction. We will, therefore, pass to the consideration of the two grounds 1 and 2, above referred to.

1. The basis of ground 1, and which is presented only in behalf of the appellant Barnett, is that the indictment does not mention his name in what is usually denominated its accusatory part. However, in the caption of the indictment his name is mentioned as a defendant therein, and which is also true in the descriptive part setting forth the acts constituting the robbery, and in which he is alleged to have participated. This ground is really a misnomer, so to speak, in saying that the court erred in overruling the demurrer filed to the indictment, when, as a matter of fact, no demurrer was filed thereto. The defendants therein all personally appeared at the trial and waived arraignment and entered pleas of not guilty; and the verdict acquitted the two female defendants but, as we have said, convicted appellants. The recited defect in the indictment has no application whatever to the appellant Sowders, and even if it were available to the defendant Barnett, it could not affect the former's conviction.

In support of the argument that the defect is available to Barnett, the case of Deaton v. Commonwealth, 220 Ky. 343, 295 S. W. 167, is cited and relied on. In that case no cognizable public offense was stated in the accusatory part of the indictment to which defendant demurred, but which the court overruled. The opinion was based entirely upon the error of the court in not sustaining the demurrer which called in question the sufficiency of the indictment and gave the trial court an opportunity to have it corrected so as to conform to strict legal requirements. But no such objection was made in this case, and unless the defect was such as to render the indictment void in its entirety, it could be waived by defendant declining to take advantage of it in the trial court, and thereby treating the accusation against him as though it was legally perfect.

A number of our opinions upholding such waiver will be found in volume 11 of West's Kentucky Digest, p. 74, Indictment and Information. See, also, the text in 31 C. J. pp. 871, 873, 874, and 877. Subsection 1 of section 122 of the Criminal Code of Practice requires the title of the prosecution to be stated in an indictment

and which is usually termed its "caption," and directs that it specify "the name of the court in which the indictment is presented and the names of the parties." Its subsection 2 directs that the acts constituting the offense shall also be stated in such concise language "as to enable a person of common understanding to know what is intended," etc. The indictment in this case conforms to both of those subsections. Section 124 of the same Code requires that an indictment "must be direct and certain as regards—1. The party charged. 2. The offense charged. 3. The county in which the offense was committed. 4. The particular circumstances of the offense charged, if they be necessary to constitute a complete offense." Section 162 of the same Code says that "the only pleading on the part of the defendant is a demurrer or a plea," while a following ing section (165) specifies the ground of demurrer to an indictment, one of which (subsection 2) is, "If the indictment do not substantially conform to the requirements of article 2 of chapter 2, of title 6, "which refers to that portion of the Code in which section 124, supra, is found.

In the case of Johnson v. Commonwealth, 15 S. W. 662, 12 Ky. Law Rep. 835, the county in which the offense was alleged to have been committed was not alleged in substantial compliance with "the requirements of article 2 of chapter 2, of title 6," which, as we have seen, is a ground for demurrer under subsection 2 of section 165 of the Criminal Code of Practice. But the court held that the omission of strict compliance with the provisions of the Code was cured by insertions in other parts of the indictment. Subsection 3 of section 165 of the Code, supra, states another ground of demurrer to an indictment, which is, "If more than one offense be charged in the indictment, except as provided in section 127." In other words, an indictment is demurrable if on its face it is duplicitous.

In the case of Moore v. Commonwealth, 35 S. W. 283, 18 Ky. Law Rep. 129, that question was presented on appeal; but the ground of demurrer, though existing, was disallowed because the defendant had waived it by not relying on it in the trial court. Compare, also, the case of Henry v. Commonwealth, 169 Ky. 548, 184 S. W. 870. In this case defendant's name appeared, as we have seen, in the caption of the indictment as one of the accused parties, and likewise appeared in its

descriptive part, and the omission to include it in the accusatory part was an error and no doubt the result of oversight on the part of the draftsman for the correction of which a demurrer would lie if it had been resorted to. But not having been done, we are convinced that the defendant Barnett waived it and cannot rely on it for the first time in this court. The chief reliance of counsel in his argument to the contrary is the case of Hardin v. Commonwealth, 202 Ky. 670, 261 S. W. 21, which was a prosecution by a warrant that failed to name the defendant, either in the caption or in its accusatory part, and only mentioned his name in that portion of the warrant directing his arrest. The defective condition was brought to the knowledge of the court by a demurrer filed thereto followed by the correction of certain other omissions therein, but the one referred to was not corrected. However, the court, after the other corrections were made, overruled the demurrer filed thereto, but which still left no direct (and but slight inferential) accusation of the defendant as the one sought to be apprehended and prosecuted. Exceptions were taken to the order of the court overruling the demurrer, and we held that its action in doing so was erroneous and that the error had not been waived in the trial court. It will therefore be seen that the ruling in that case in no wise conflicts with our views as hereinbefore expressed.

The basis of the argument in support of ground 2, supra, is the admission of testimony given by the policemen and by Baker as to the description that Powers gave to them of the automobile, and persons driving it who perpetrated the robbery, and the case of Kesterson v. Commonwealth, 254 Ky. 287, 71 S.W. (2d) 622, is relied on in support of that contention. But only a cursory examination of that case will reveal that it presents an entirely different situation than is done by the facts of this case. In the first place, the issue to which the alleged hearsay testimony was directed in that case was a hotly disputed one, it relating to an alibi relied on by the accused in that case; while in this case the alleged incompetent testimony, which it is contended corresponds to the incompetent testimony in that case, was in proof of an issue or issues that another undoubtedly competent witness (Powers) testified to, and which none of the defendants disputed, i. e., as to the character of automobile in which the robbers were riding, their personal

354

description, including their clothing, and in describing the money which they obtained from him. With his testimony touching such matters undisputed by any of the defendants, its repetition by other witnesses could not possibly prejudice appellants, even if it should be regarded as incompetent, but which latter, for the reasons stated, we need not determine, although it might not be amiss to say that as presently advised we think it was competent. Such being the condition of this record relating to this ground, it is clear that we are in no event authorized to reverse the judgment therefor.

Perceiving no error prejudicial to the substantial rights of defendants, the judgment is affirmed.