## Jones v. Commonwealth.

(Decided May 6, 1938.)

JESSE MORGAN and PAUL GROSS for appellant.

HUBERT MEREDITH, Attorney General, and GUY H. HERD-MAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant, Herman Jones, was, upon his trial on an indictment charging him with the crime of voluntary manslaughter, convicted and his punishment fixed at 15 years' confinement in the penitentiary.

He appeals, urging for reversal, of the judgment: (1) The insufficiency of the indictment and that his demurrer thereto should have been sustained; (2) the in-

sufficiency of the evidence to authorize submission of the case to the jury; (3) that the admission of certain evidence introduced was erroneous; and (4) he challenges the propriety of the instructions.

Turning our attention to the consideration of these objections in the order presented, the first is that the indictment is defective in its accusatory part and that therefore it cannot be cured by the descriptive part under the well-settled rule that both the accusatory and descriptive parts of an indictment must be sufficient and, if either is defective, the indictment is bad.

The accusatory part of the indictment, thus assailed as defective, says:

"The grand jury of the county of Perry, in the name and by the authority of the Commonwealth of Kentucky accuse Herman Jones of the crime of voluntary manslaughter committed in manner and form as follows, to-wit:

"The said Herman Jones, in the said county of Perry, on the 8th day of May, 1937, and before the finding of this indictment, on and upon a public highway in the said county of Perry, on and upon one Mollie Reeves, unlawfully, willfully, feloniously and in a negligent, reckless, careless and wanton manner, did make a violent assault."

The accusation thus made is followed by its descriptive part, charging the manner in which the defendant committed the charged crime of manslaughter, by his "unlawfully, willfully, feloniously, and in such a negligent, careless, reckless and wanton manner that his said act was reasonably calculated to endanger the life of another, drive, run and direct said automobile upon, against and over the said Mollie Reeves," thereby striking and killing her.

The appellant, in support of his contention that the accusatory part of the indictment is defective, cites and relies upon the case of Privett v. Commonwealth, 233 Ky. 471, 26 S. W. (2d) 3, 4. In that case the indictment in its accusatory paragraph named the offense of arson, while the descriptive part of the indictment charged the defendant with the commission of one of the offenses denounced by section 1168, Kentucky Statutes, namely, that of willfully and maliciously burning the storehouse of another. The court, in considering

the variance between the offense named in the indictment's accusatory part and that set out in its descriptive part, as being different offenses, said:

"The indictment now under consideration accuses defendant with the common-law offense of arson, which is the willful, felonious, and unlawful burning of a dwelling house, while the descriptive part of the indictment charges him and his codefendants with having committed the statutory offense of burning, in the same manner, a storehouse The Deaton Case [220 Ky. 343, 295 S. W. 167], which dealt with the same defect now under consideration and which was therein held to be fatal to the indictment, has been followed and approved in the later cases of Middleton v. Commonwealth, 226 Ky. 220, 10 S. W. (2d) 812, and Gregory v. Commonwealth, 226 Ky. 617, 11 S W (2d) 432."

Testing the sufficiency of the indictment here before us by the criterion announced in these cases, we are of the opinion that the trial court properly overruled appellant's demurrer challenging its sufficiency upon such ground, for the reason that, we conclude, the requirements of section 124, Criminal Code of Practice, that an indictment must be direct and certain as regards, first, the party charged and second, the offense charged, were satisfied by the charges made by each paragraph of the indictment here criticized, as it appears from a reading of the accusatory and descriptive paragraphs of the indictment, set out supra, that they are almost identical in their terms describing the offense, both as charged and committed, where the first accuses the appellant with committing the crime of the voluntary manslaughter of Mollie Reeves, "by unlawfully, willfully, feloniously and in a negligent, reckless, careless and wanton manner" making a violent assault on her by "then and there driving, controlling, managing and directing a certain automobile" and the latter or descriptive part of the indictment charges that the appellant did "unlawfully, willfully, feloniously, and in such a negligent, careless, reckless and wanton manner that his said act was reasonably calculated to endanger the life of another, drive, run and direct said automobile over the said Mollie Reeves," thereby killing her.

The language of the opinion in Middleton v. Com-

448

monwealth, 226 Ky. 220, 10 S. W. (2d) 812, 813, is here appropriate. There we said:

"While we have no intention to depart from the modern rule of disregarding hypercritical and mere technical deficiencies in indictments, or to be out of harmony with the trend of liberal construction of such instruments by dispensing with ancient exactness and formality, nevertheless an indictment must substantially conform to established principles and rules of criminal pleading."

Further, in the case of Gregory v. Com., 226 Ky. 617, 11 S. W. (2d) 432, 433, the appellants were jointly indicted for the crime of sedition. Each demurred to the indictment, which was in each case overruled. Upon appeal, the ruling was reversed as improper, upon the ground that the accusatory and descriptive parts of the indictment did not charge the same offense, the language of the opinion being as follows:

"In the accusatory part of the indictment here in question, the appellants are accused of the crime of 'sedition' The descriptive part of the indictment sets out the offense denounced by section 7 of the act It is essential that the accusatory and the descriptive part of an indictment cover the same offense. In the case of Deaton v Commonwealth, 220 Ky. 343, 295 S. W. 167, we said that:

" 'A good statement of the offense in the descriptive part of the indictment will not supply the failure to name the offense in the accusatory part of the indictment, and vice versa, a correct naming of the offense in the accusatory part of the indictment will not supply a defective statement of the acts constituting the offense in its descriptive part.' "

We are of the opinion that to here undertake to search and seek with a supercritical eye and interest for a discrepancy or variance between the offenses charged and described in the two paragraphs, so reasonably susceptible of being interpreted as describing the one and the same offense, would be indeed a magnifying and stressing of "hypercritical and mere technical deficiencies" in the indictment, if any. Therefore, we conclude that by the similar language of the two paragraphs, the one and the same offense of voluntary manslaughter was charged, as being committed by

the appellant's operating his automobile on a public highway in a manner likely to endanger others using it and, when so recklessly and wantonly driving it, striking and killing another using the highway.

Appellant next urges as a grounds for reversal of the judgment that the evidence in the case was not sufficient to warrant the jury in its verdict returned.

The material facts and circumstances, as disclosed by the evidence, are that at about 9:30 of the night of May 8, 1937, the deceased, Mollie Reeves, was, together with some others of her friends and kinspeople, walking "close together in a bunch," on the left side of the highway as they were returning from their night church services; that when they had reached and were so walking along this curve in the road, they saw a car coming around it from their rear, which was then being driven at a very high rate of speed and "kind of wobbling", that it was then "starting to get away from the road, left the concrete and came around there in a skidding condition"; that they stood and watched it coming towards them, until it got up to them, when the witness Reeves stated he and his wife, Bonnie "jumped out from in front of the car, and we cleared the car, just as I heard a lick like the car had hit something"; that as they hit the ground, he turned to see what had happened and that "he (defendant) was crossing the highway and wrecked against the bank on the other side"; and that he couldn't see any of the parties that had been standing there with them. He further testifies that he then started up the road looking for Mollie Reeves, and first found Harlan Gross, who had just been with their group as they were walking home, lying by the side of the road badly hurt; that looking up the road, he saw someone lying about the middle of the highway on the black strip; that he ran to her and saw it was Mollie Reeves, when seeing another car coming, he pulled her off the concrete.

Also, it is testified by Mrs. Bonnie Reeves that the deceased, Mollie Reeves, was walking arm in arm with her and in the group coming from the church but a minute before she and her husband had jumped from the road to avoid the car and at which time the deceased, Mollie Reeves, was but a step behind them.

The appellant urges, in criticizing the insufficiency of the evidence, that no witness testifies that he saw the car hit Mollie Reeves.

Reeves and his wife, Bonnie, both testify that Mollie Reeves was walking with and right by them as the car passed and they jumped, when he stated he heard "a lick like the car had hit something." Undoubtedly, "the lick" he heard, "like the car hit something" was its at the time striking Mollie Reeves, where she stood with them on the side of the road. Also. it was further shown and uncontradicted, that there was a trail of blood extending from the spot along the side of the road where she had been standing up to the place, some 50 or 60 feet ahead, in the center of the highway where she was knocked or carried by the car and from which point a further trail of blood extended over to the side of the road to which she was removed by the witness Reeves

The evidence of the witnesses French Combs and Preston Robbins is that there was a trail of blood from the edge of the highway, up the road to the center, and then from about the center over to where Mollie Reeves was lying

The appellant evidently disregards or forgets this evidence in arguing that the deceased was hit in the middle of the road rather than when standing over to the side of it, as is shown by the evidence of all the witnesses This admitted physical fact of the course of the blood trail, leading from the side of the road to the center point thereof, some 50 or 60 feet ahead, would seem to fully refute the contention of appellant that the deceased was struck when in the center of the road.

Looking now to the disputed question as to what was the manner and rate of speed at which the appellant was driving at the time this tragic accident befell the victims of it, the witnesses who watched his approach as he came around the road curve towards them state that they were familiar with estimating the pace or rate of speed of passing cars, or at least could tell whether a car at such time was traveling fast or slow, and that the car was traveling at a high rate of speed as it came around the curve the witness Reeves stating that it was coming at a rate of 65 miles an hour.

The Commonwealth's witness. Preston Robbins, an automobile mechanic, experienced in driving cars and familiar with gauging their speed rate. states that he had seen, just before this accident occurred, the appellant up at the gas station at Lothair, but had left the

station before the appellant and was traveling towards the point of the road where the accident took place at the rate of 40 miles an hour; that the appellant, who followed him, drove his car at a much greater rate of speed, in that he overtook and passed him.

Further, the testimony shows that appellant was running his car at such a high rate of speed that it swerved and ran off the concrete for a distance of some 183 feet before the appellant got it back on the paved part of the road and struck the deceased, Mollie Reeves

Further, the fact itself of the appellant's being unable to stop his car throughout the distance of this 183 feet, while traveling off of the highway, is impressive evidence as to the rate of speed at which he was then racing along the road at the time he struck and killed the deceased, Mollie Reeves, while standing beside it.

Also, the Commonwealth's witness, George Turner, deputy sheriff, testifies that he was called to the scene of the accident in which Mollie Reeves was killed upon this occasion and arrived there within about 15 minutes after it had occurred, when he found the deceased, Mollie Reeves, and also Mrs. Clay "laying there dead."

Appellant by counsel here moved the court to exclude from the consideration of the jury the testimony of the witness as to anybody being dead as the result of this accident other than the deceased, Mollie Reeves, for whose killing alone the appellant was upon trial under an indictment therefor.

Also, the ground of objection was that the witness stated that he didn't arrive at the scene of the accident until after it had occurred, while there were numerous eyewitnesses to the tragedy who had been introduced and testified as to how it had occurred.

The court's ruling upheld the appellant's contention and charged the jury that it would not consider, for any purpose, anything said by a witness about anyone else having been killed, as the appellant was here being tried only for the killing of Mollie Reeves, unless the witness testified as to some other matter not disclosed by the eyewitnesses.

Witness was further asked if upon this occasion he saw the appellant, Herman Jones, there and took

him into custody, to which he replied that he did, and in response to the question as to the then condition of the appellant, he stated that he had been drinking.

We see no just ground for the claim of appellant that he was prejudiced by this ruling. Further, it appears that the witness Preston Robbins, in addition to having testified that the appellant was driving his car recklessly and without regard to the safety of others as he drove his car from the gas station at Lothair to the scene of the accident, testified that, after reaching the scene of the accident, he looked into the car of the appellant and there found a suitcase full of half-gallon fruit jars and a five-gallon empty jug which smelled of liquor.

This witness, who made a search of the defendant's property was not an officer, but merely a traveler upon the highway, who had been inconvenienced and passed on the highway just before the accident by the reckless driving of the appellant, and he was thus making further inquiries into his then condition when so passing him and later striking and killing the deceased.

Certainly, there was no error in allowing the witness to tell the jury of his finding the empty jug, which smelled of liquor, in appellant's car.

As argued by appellee, the matter of drinking is necessarily an ingredient of recklessness, and this evidence bore upon the Commonwealth's effort to here show that the driver of the car, charged with reckless and wanton driving, was at the time intoxicated.

The evidence submitted was therefore both material and substantial as bearing on the question of whether or not the drinking induced and brought about appellant's charged reckless and wanton driving.

Appellant, on the other hand, denies that he was driving recklessly upon this occasion, or that he was drinking, but affirms that the killing of the deceased, Mollie Reeves, by striking her with the car, was entirely accidental and unavoidable by him.

As to this, he says that, as he was driving over this curved part of the road, he met two groups of people, who were passing to and fro across the road, and that, in trying to avoid striking any of them, he lost control of his car and hit and killed the deceased, Mollie Reeves.

Mr. Greer, his employer, testified that the appellant had driven a truck for him in his business for several years, and that he had regularly and faithfully served him; that he did know of his drinking during his working hours but did not know how he spent his leisure time or as to whether or not he then drank.

As to this counterevidence, presented by the appellant and his witnesses, it merely served to join the issue upon the evidence introduced by the Commonwealth as to whether or not appellant had, when recklessly and wantonly driving his car, struck and killed the deceased, Mollie Reeves, for which he was here indicted.

The determination of this issue, joined by this conflicting evidence, rested certainly with the jury.

Also, appellant criticizes the instructions given, complaining that they are too prolix and some of them erroneous.

We have carefully read the instructions and find them to be, as urged by the appellee, practically the same as the approved instructions given in the case of Jones v. Commonwealth, 213 Ky. 356, 281 S. W. 164.

Appellant particularly criticizes the given instruction No. 5 as erroneous, wherein the court in substance told the jury that, if they could not believe from the evidence beyond a reasonable doubt that the defendant was guilty of voluntary manslaughter, as set out in its instruction No. 2, or of involuntary manslaughter, as set out in its instruction No. 3, and believed that the killing of Mollie Reeves was accidental and unintentional, then it would find for the defendant.

This instruction is practically the same as instruction No. 4 given in the Jones Case, except that here the instruction given by the court refers to its instructions Nos. 2 and 3, which were instructions on voluntary and involuntary manslaughter, while the instruction No. 4, approved in the Jones Case, told the jury that if the jury believed from the evidence that the killing of Della Smallwood, referred to in the indictment and instructions herein, resulted from an accident, occurring otherwise than as set forth in instructions 2 and 3, then it should find the defendant not guilty.

We are therefore led to the conclusion that this

454

criticism of the instructions given must be held to be without merit.

See, also, the case of King v. Com., 253 Ky. 775, 70 S. W. (2d) 667, there holding and applying this rule, that a person operating an automobile on a highway in a manner that is likely to injure others using the highway, and recklessly, wantonly, and with gross carelessness striking and killing another, is guilty of voluntary manslaughter.

This was like the instruction given the jury and its finding upon the conflicting evidence here before us.

The judgment of the lower court being, therefore, in accord with this approved holding and our views, it is affirmed.