## Overstreet v. Commonwealth.

(Decided March 12, 1912.)

### Appeal from McCracken Circuit Court.

1. Criminal Law—Indictment—Arson—Houseburning.—An indictment that in the accusative part charges that the crime is arson, but in the descriptive part shows that it is the statutory offense of houseburning and not the common law offense of arson, is good on demurrer.

2. Criminal Law—Indictment—Essential Requisites of.—An indictment should contain the name of the party charged, the offense charged, the county in which it was committed, and a statement of the acts constituting the offense in ordinary and concise language.

3. Criminal Law—Indictment—Sufficiency of.—An indictment may contain more than is necessary or it may be phrased in inapt words, or the sentences be ungrammatically expressed or the spelling not good; but, if when considered as a whole the charge is stated with sufficient clearness and certainty to enable the accused to know what he is charged with, and to enable the

court to pronounce judgment, no error in form of expression will make the indictment bad.

4.  Criminal Law—Indictment—To be Considered as a Whole.—In considering the sufficiency of an indictment it will be read as a whole; and if when so read it substantially conforms to the requirements of the Code in respect to material and substantial matters, it will be a good indictment.

5.  Criminal Law—Arson—Houseburning.—Arson at common law was the burning of a dwelling house of another or some outhouse used in connection therewith; and this common law offense is punishable under Section 1167 of the Kentucky Statutes, providing that "if any person shall be guilty of arson he shall be confined in the penitentiary not less than five nor more than twelve years."

6.  Criminal Law—Pleading—Technical Rules of, Now Obsolete.— The strict rules that prevailed at common law, and for many years in this State, have been superseded by a more liberal practice.

7.  Criminal Law—Reversible Error.—Under Section 340 of the Criminal Code, a judgment of conviction will not be reversed except when upon a consideration of the whole case the court is satisfied that the substantial rights of the defendant have been prejudiced. It is not every error of law on the record that will justify a reversal.

8.  Criminal Law—Reversible Error.—This Code provision embraces all errors assigned, without regard to what part of the proceeding or trial they occur in. Every error relied on is to be subjected to the test—did it prejudice the substantial rights of the accused; if it did, a new trial will be ordered, if it did not, an affirmance will follow.

9.  Criminal Law—Arson—Description of Property.—If in any case it should be made to appear from the affidavit of the accused that the indictment did not accurately advise him of what property was burned, the court should require the Commonwealth to furnish a bill of particulars.

10. Criminal Law—Arson—Ownership of Property.—The fact that the ownership of property was laid in the real owner and not in the lessee was not material, as an error in describing the

ownership of property is not generally important.

SAMUEL H. CROSSLAND for appellant.

JAMES GARNETT, Attorney General, and JAMES D. BLACK, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Under the following indictment the appellant Overstreet was convicted of the statutory crime of house-

burning and sentenced to imprisonment for from one to six years.

"The Grand Jurors of the county of McCracken, in the name and by the authority of the Commonwealth of Kentucky, accuse George Overstreet, Butler Fondaue, R. H. Deboe, Oce Potter and Hal Wallace of the offense of arson, committed in manner and form as follows:

"The said George Overstreet, Butler Fondaue, R. H. Deboe, Oce Potter and Hal Wallace, in the said county of McCracken on the 21st day of April, 1911, and before the finding of this indictment, did feloniously, wilfully and maliciously set fire to and burn the storehouse of Herman Friedman, against the peace and dignity of the Commonwealth of Kentucky."

The principal question presented for our consideration is, Was this a sufficient indictment for house-burning, and can a conviction for house-burning be sustained under it?

It is insisted by counsel for appellant that the demurrer to the indictment should have been sustained, or that his motion for a verdict of not guilty at the conclusion of the evidence should have been sustained.

Strictly and technically speaking, the indictment is not good either as an indictment for arson or for house-burning. But, conceding this much, it does not follow that the demurrer should have been sustained, or that the motion for a directed verdict was improperly overruled. We have in this State no statute covering particularly or specifically the common law crime of arson. Section 1167 of the Kentucky Statutes provides that—

"If any person shall be guilty of arson, he shall be confined in the penitentiary not less than five nor more than twelve years."

And it is obvious that this section was intended to furnish a penalty for the common law crime of arson; but, for a definition of "arson" we must go to the common law books. Arson at common law, the punishment for which was death, was the burning of the dwelling house of another or some outhouse used in connection therewith. Russell on Crimes, Vol. 2, page 547; Wharton's Criminal Law, Vol. 1, sec. 825. Measured by this accepted definition, it is apparent that the indictment did not describe the crime of arson. It is also very clear that the indictment against Overstreet, although the offense charged is designated as arson, was found under Section 1169 of the Kentucky Statutes, providing that—

"If any person shall wilfully and unlawfully burn a * * * storehouse * * * he shall be confined in the penitentiary not less than one nor more than six years; * * * ."

We have therefore, an indictment naming the offense as arson in the accusative part, but showing in the body or descriptive part that the offense committed was not arson but statutory house-burning. And so, if the indictment is to be judged by strict standard of criminal pleading, the demurrer to it should have been sustained, because, under exact rules of pleading, the identical offense charged should be described both in the accusative and descriptive parts of the indictment; and an indictment that designated in the accusative part one offense and described another in the body, would be demurrable. But the strict and technical rules of criminal pleading that prevailed at common law and for many years in this State have been superseded by the more just and sensible practice that declines to be controlled by unimportant and unsubstantial forms that serve to delay and obstruct the administration of the criminal law without protecting the accused in any right guaranteed to him by either the common law, or the Constitution or Statutes of the State. It is of course fundamental that every person accused of crime shall be informed of the nature of the accusation against him, so that he may be prepared to make his defense; and, with this object in view, it is provided in section 122 of the Criminal Code of Practice that:

"The indictment must contain (1) the title of the prosecution, specifying the name of the court in which the indictment is presented and the names of the parties; (2) a statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended; and with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the rights of the case."

And in section 124, that:

"The indictment must be direct and certain as regards (1) the party charged; (2) the offense charged; (3) the county in which the offense was committed; (4) the particular circumstances of the offense charged, if they be necessary to constitute a complete offense."

In other section, there are provisions further regulating the practice in respect to indictment, but the es-

sential things are that the indictment shall contain (a) the name of the party charged, (b) the offense charged, (c) the county in which it was committed, (d) and a statement of the acts constituting the offense, in ordinary and concise language and in such a manner as to enable a person of common understanding to know what is intended, and such degree of certainty as to enable the court to pronounce judgment on conviction according to the rights of the case. It is apparent that when an indictment furnishes this information, the accused cannot be misled or deceived by it or fail to know what offense he is charged with, nor will the court be in doubt when it comes to pronounce judgment. An indictment may contain more than is necessary, or it may be phrased in inapt words, or the sentences may be ungrammatically or awkwardly expressed, or the spelling not conform to approved standards, but if, when considered as a whole, the charge is stated with sufficient clearness and certainty to enable a person of common understanding to know what he is charged with, and to enable the court to pronounce judgment, no error in form of expression will make the indictment bad. Nor will any difference between the accusative part of the indictment and the body or descriptive part of it, that is not so substantial as to be misleading, be fatal to the sufficiency of the pleading. In other words, in considering the sufficiency of an indictment, it will be read and considered as a whole, and if when so read and considered it substantially conforms to the requirements of the Code in respect to the matters therein pointed out as material and necessary, it will be a good indictment. We do not mean to say that an indictment that departs from the substantial rules of Code pleading or that fails in some material respect to conform to common law or statutory requirements should be treated as a good pleading. What we do mean to say is that it is only the substantial material things that are necessary, and that the failure to observe formal or immaterial things will not be regarded as fatal to the indictment. That this just as well as liberal rule of practice should obtain in this court is made plain by section 340 of the Criminal Code, reading:

"A judgment of conviction shall be reversed for any error of law [appearing on the record when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby.]"

The words in brackets were inserted in this section by an act of March 4, 1880. Previous to this amendment, the section read:

"A judgment of conviction shall be reversed for any error of law to the defendant's prejudice appearing on the record."

It will be observed that there is quite a difference between the section as it originally appeared, and the section as it now stands; and it is obvious that the Legislature intended by the amendment to confer upon this court the power to determine for itself upon a consideration of the whole case whether or not the substantial rights of the defendant were prejudiced by any error of law appearing on the record. And so it is the settled practice in this court not to remand for a new trial if there is any error of law appearing in the record but to order a new trial only for errors that upon a consideration of the whole case appear to us to have been prejudicial to the substantial rights of the accused. Upon this point we said in Hargis v. Commonwealth, 135 Ky., 578, after citing many cases in support of it, that:

"The plain purpose of the amendment was to provide that a judgment of conviction should not be reversed unless upon consideration of the whole case the court was satisfied that the substantial rights of the defendant had been prejudiced by the error complained of. This had been the rule for a long time under the Civil Code, and the purpose of the amendment was to make the rule in criminal cases practically the same as in civil cases. Under the former provision, the court was required to reverse when it found an error in the record. It was not allowed to speculate as to what was the effect of the error. The amendment was aimed to change this rule and to provide that no case shall be reversed where the defendant has had substantially a fair trial of the merits of his case."

Further emphasizing this view, we said in Parrish v. Commonwealth, 136 Ky., 77, that:

"We have more than once announced that it is not every error that will authorize a reversal. Our jurisdiction is altogether a creature of the statute, and the law that gives us jurisdiction declares, in section 340 of the Criminal Code of Practice, that a judgment of conviction shall only be reversed for error of law 'appearing on the record, when upon consideration of the whole case the court is satisfied that the substantial rights of the de-

fendant have been prejudiced thereby.' Therefore, when a person who has been convicted of crime appeals to this court, he must be able to affirmatively show errors of law that have prejudiced his substantial rights, and these errors must appear to us to be of sufficient importance to direct a new trial. * * * The presumption of innocence that protects the accused ends when a judgment of conviction is entered against him in the trial court. On appeal we must and do assume that his trial was regular, and that his guilt was duly established before the tribunal created by law for the purpose of inquiring into it." To the same effect is Henson v. Commonwealth, 139 Ky., 173; Middleton v. Commonwealth, 136 Ky., 354; Reed v. Commonwealth, 138 Ky., 568; Gordon v. Commonwealth, 136 Ky., 508; and Oldham v. Commonwealth, 136 Ky., 789.

We may also observe that it would be a rare thing in the trial of an important and hotly contested case if errors of law could not be found in the record, judged by strict legal standards. But every judge and lawyer who has had experience in the trial of criminal cases know that a great many of these errors do not at all prejudice or affect the substantial rights of the accused. The basic rule of our system of criminal pleading and practice is that every person accused of crime has the right to demand and have a fair trial, in substance as well as in form; and when he has had such a trial before the tribunal created by law for that purpose, which under our practice is a trial judge and a jury, he must abide by the decision, unless it be that his substantial rights have in some manner been prejudiced. There is no right of appeal guaranteed by the constitution, but the Legislature has given the accused who is convicted the right of appeal, and has conferred upon this court the right to review the trial in which he was convicted. But, in conferring this right of review, the Legislature by the amendment before noticed, invested this court as a final arbiter between the Commonwealth and the accused with wide discretion, and this discretion puts upon us large power and responsibility, leaving it to our judgment to say for what errors there shall be a reversal. Having this view of the jurisdiction and authority of this court in criminal cases, it is our invariable practice to carefully consider the whole record in every criminal case that comes before us and to endeavor to determine

from such consideration whether or not errors relied on for reversal were of such a character as to prejudice the substantial rights of the accused. If they were, we feel it our duty to remand the case for a new trial; if they were not, we likewise feel it our duty to affirm the judgment. We may also notice that these rules which control us in the disposition of criminal cases are not confined to any particular error or class of errors. The Code provision applies to and embraces all errors assigned without regard to what part of the proceedings or trial they occur in. Every error relied on whatever it may consist of is to be subjected to the test: "Did it prejudice the substantial rights of the accused;" if it did, a new trial will be ordered; if it did not, an affirmance will follow.

Measured by these general observations, let us see whether the error in this indictment prejudiced the substantial rights of the accused. The indictment gives the name of the party accused, the county in which the crime was committed, and described the acts in language so plain that any person of ordinary intelligence could not fail to understand the nature of the crime charged. It is, we think, plain that the technical misuse of the word "arson" did not and could not have misled or deceived Overstreet, or his counsel or the trial court. The word arson has a well-known, popular, as well as legal meaning, and is generally and commonly understood to mean the unlawful burning of the property of another. And so, when one is charged with having burned the storehouse or other house of another, it is commonly understood that he is accused of the crime of arson. As illustrating the generally accepted and popular meaning of the word, we may notice that the Legislature in adopting the chapter on crimes and punishments in the Kentucky Statutes, inserted therein a sub-division entitled "arson," and in this sub-division placed all the sections relating to the willful and malicious burning of property. And so, the use of the word "arson" in designating the crime of willfully and maliciously burning property owned by another is not according to the usually accepted meaning of the word, misleading or inapt, either under the Code or statute. If Overstreet, assuming him to be a person of ordinary intelligence, had read or heard read the indictment, he could have had no difficulty whatever in learning from it that he was charged with having burned on the 21st of April, 1911, the storehouse of Herman Friedman in the county of

McCracken.  This indictment gave him all the information that was necessary to enable him to prepare his defense, and the trial court by reference to the statute fixing the penalty for houseburning could have no difficulty in advising the jury or in pronouncing judgment.  And so we have no difficulty in putting this error in the class of harmless ones.

What we have  said upon this point disposes  of  a large part of the argument made by counsel for appellant; but  we will  notice briefly  other  assignments of error.  It is said that an indictment charging the burning of a storehouse should so describe it as that the accused may know what particular storehouse he is charged with burning.  The argument being  that Friedman might have owned a number of storehouses, and so Overstreet could not say with certainty which one he was charged with burning.  But the difficulty suggested by counsel finds no support in the record, as there is no intimation that Overstreet did not know what storehouse he was accused of burning.  If, however, in any case it should be made to appear from the affidavit of the accused that the charge of burning a storehouse or other house did not accurately advise him of what storehouse or house was burned, we think it would be the duty of the court to require the Commonwealth to furnish a bill of particulars; but unless a bill of particulars is demanded by the accused, and it appears to the court in the exercise of a reasonable discretion to be necessary to enable him to prepare his defense, there would be no reason for requiring it.  Certainly there was not in this case.

It is also pointed out as error that the Commonwealth was permitted, after it had closed its case, to introduce several witnesses to prove that the upstairs rooms in the storehouse burned were used as a bed-room.  A sufficient answer to this is that the introduction of this evidence was wholly unnecessary and entirely immaterial to the accused.

It is further said that the ownership of the property should have been laid in R. L. Peacher, and not Herman Friedman, as Peacher was the lessee of the property at the time it was burned.  But an error in describing the ownership of property is not ordinarily material, and in this case there was no error in describing the ownership as the property was in fact owned by Friedman.  This question was before the court in Commonwealth

v. Napier, 27 Ky. Law Rep., 131. In that case the indictment described the property burned as being owned by Hiram J. Caywood, when in fact it was owned by his wife, Sallie Caywood. The lower court held that this error constituted a fatal variance and discharged the defendant. In holding this ruling error, the court, after quoting section 128 of the Criminal Code, reading:

"If an offense involve the commission of, or an attempt to commit an injury to person or property, or the taking of property, and be described in other respects with sufficient certainty to identify the act, an erroneous allegation as to the person injured or attempted to be injured, or as to the owner of the property taken or injured or attempted to be injured, is not material."

Said:

"The grand jury knew, as did the defendant, what property was intended to be described in the indictment. Section 128 of the Criminal Code was intended to modify the rigorous requirements of the common law as to the description of the person or property injured. When the act can be identified, there is no danger of a defendant being put in jeopardy twice for the same offense."

Finding no error prejudicial to the substantial rights of the accused, the judgment is affirmed.