## Mays and Terry. v. Commonwealth.

(Decided April 21, 1922.)

## Appeal from Montgomery Circuit Court.

1   Criminal Law—Pleading.—The common law technical rules of
criminal pleading are superseded in this Commonwealth by sections 122 and 124 of the Criminal Code of Practice. By the latter section it is required that the indictment must be direct and certain as regards the party charged, the offense charged, the county in which the offense was committed, and the particular circumstances of the offense if they are necessary to constitute it. And according to the first named section the acts constituting the offense must be stated in such ordinary and concise language as to enable a person of common intelligence to understand what is intended and with such a degree of certainty as to enable the court to pronounce judgment, on conviction, according to the rights of the case.

2.   Indictment and Information—Accusation and Sufficiency.—In the accusatory part of the indictment the defendants were charged with unlawfully selling spirituous, vinous and malt liquors; and in the charging or descriptive part they were charged with, not only selling such liquors (without naming the person to whom sold), but also, with keeping them for sale, and with transporting them unlawfully. Held, that the indictment violated the requirements of the two sections above referred to and the demurrer filed to it should have been sustained. And, further, that the fact that the court confined the evidence to transportation only and so instructed the jury did not cure the error.

HENRY WATSON and JAMES CLAY for appellants.

CHAS. I. DAWSON, Attorney General, and THOMAS B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The grand jury of Montgomery county returned against appellants, M. G. Mays and Sam Terry, this indictment, omitting caption and signature: "The grand jury of Montgomery county, in the name and by the authority of the Commonwealth of Kentucky, accuse M. G. Mays and Sam Terry, of the offense of selling spirituous, vinous and malt liquors, committed as follows, to-wit: That said M. G. Mays and Sam Terry, on the 19 day of October, 1921, and within one year before the finding of this indictment, did, in the county and state aforesaid, unlawfully give away, sell, barter and lend, directly

and indirectly, spirituous, vinous and malt liquors, and mixture thereof, and transport and keep for sale such spirituous, vinous and malt or intoxicating liquors and mixtures of same, the said liquors so held and kept was for purposes other than mechanical, scientific, sacramental or medicinal purposes, against the peace and dignity of the Commonwealth of Kentucky.''

The demurrer filed thereto was overruled and exceptions taken, whereupon defendants moved to require the Commonwealth to elect the particular offense out of the number described for which they would be tried; and the transcript, without showing any action of the court on that motion, recites: ''And thereupon came the Commonwealth and elected to try the defendants under the charge of keeping for the purpose of sale and transporting spirituous, vinous and malt liquors.'' Defendants then moved the court to require the Commonwealth to elect whether it would prosecute them for the offense of ''keeping for the purpose of sale'' spirituous, vinous, malt and intoxicating liquors, or the one for ''transporting'' such liquors, which motion was overruled, and defendants excepted.

The evidence heard upon the trial was confined exclusively to *transporting* intoxicating liquors, and the instruction to the jury submitted to it only that offense. A verdict of ''guilty'' was returned as to each of the defendants and their punishment fixed at a fine of $50.00 and confinement in the county jail for a period of thirty days. Each of their motions for a new trial was overruled and they have appealed, relying for a reversal upon the above rulings of the court, the insufficiency of the evidence to authorize the conviction and other enumerated errors; but the conclusion we have reached with reference to the insufficiency of the indictment renders it unnecessary to consider or determine any of the other grounds relied on.

That the indictment is bad for duplicity, in that it charges a number of separate and distinct offenses, is too well settled to require argument, since it has been the uniform ruling of this court that the selling of intoxicating liquors unlawfully is one offense, the keeping it for sale is another, and now transporting it is still another; and subsection 3 of section 164 of the Criminal Code of Practice makes this defect in an indictment a ground for demurrer thereto, unless the joined offenses are such as are set forth in section 127 of the Criminal Code of Prac-

tice, which is untrue in this case. The court therefore erred in overruling the demurrer to the indictment and in failing to sustain the defendant's motion for the Commonwealth to elect which offense it would prosecute, but perhaps that error was cured under the doctrine of the cases of McCreary v. Commonwealth, 163 Ky. 206, and Mobley v. Commonwealth, 190 Ky. 424, since the evidence heard as well as the instructions given confined the prosecution solely to the transportation of intoxicating liquors unlawfully. Under the doctrine of the cases referred to, the erroneous ruling on the demurrer and the motion to elect might perhaps be considered as harmless, since the court and the prosecuting attorney in conducting the trial treated the allegations as to other offenses as surplusage, which action on their part rendered the duplicity in the indictment non-prejudicial.

But, it will be observed that in the accusatory part of the indictment now under consideration the only offense charged is that of "selling spirituous, vinous and malt liquors," while in the descriptive part of it defendants are charged with (a), unlawfully giving away, selling, bartering and lending such liquors, and with (b), keeping them for sale, and also with (c), transporting them for other than the allowed purposes under the statute. We, therefore, have a case in which, under the indictment accusing defendants with only *selling* such liquors, they are tried and convicted of *transporting* them. The indictment, however, is insufficient to properly charge the offense of unlawfully selling intoxicating liquors, since it nowhere names the purchaser thereof, nor is the excuse for such failure that the buyer was unknown to the grand jury, alleged therein. It is essential in an indictment for the unlawful sale of liquor that the person to whom it is sold should be named. Wilson v. Commonwealth, 14 Bush 159. This is required so as to enable the defendant to have an opportunity to prepare his defense, if he has any, and conforms to all rules of correct criminal pleading.

Section 124 of the Criminal Code of Practice requires among other things that "the indictment must be direct and certain as regards . . . the offense charged." It surely could not be contended under that section (the requirement of which was also necessary at common law), that it would be competent to name an offense and then to describe and try the defendant for a wholly separate and distinct one possessing no similar elements in

common with the named one. It will be observed that the Code requirement is that "*the* offense charged" shall be stated, and not merely that "*an* offense charged" shall be stated. That the section must be complied with was held by us in the cases of Brooks v. Commonwealth, 98 Ky. 143, and Bennett v. Commonwealth, 150 Ky. 604. In order to constitute a sale of an article there must be both a seller and a purchaser, as well as a consideration paid by the latter and accepted by the former, by means of which the title is transferred from the seller to the purchaser. No such elements or anything analogous thereto enter into the condemned act of transporting intoxicating liquors, which term primarily signifies a removal of the thing transported from one place to another, but under circumstances forbidden by law. It is not necessary that more than one person participate in the transaction and it is not essential to the commission of the offense that there should be any change in the title to the thing transported, nor even that the transporting should be with the intention to engage in any unlawful traffic in the transported article, and there is, therefore, no kinship, so to speak, between the two offenses whatever.

It was otherwise in the case of Overstreet v. Commonwealth, 147 Ky. 471, wherein the defendant was accused of having committed the common law offense of arson, but in the descriptive part of the indictment the statutory offense of burning a store house, as denounced by section 1169 of the Kentucky Statutes, was charged. It was held therein that the variance between the accusatory part of the indictment and the descriptive part of it was not sufficient to mislead the defendant and that the language was sufficient "to enable a person of common understanding to know what was intended; and with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the right of the case." (Section 122, Criminal Code.) In arriving at the conclusion the court took pains to point out the similarity between the common law offense of "arson" and the statutory one of "unlawfully burning a store house," emphasizing the fact that each of them was the unlawful burning of property and the principal distinguishing feature separating the elements of the two offenses was the fact that in order to constitute the common law offense of arson the property burned must be a dwelling house or some building used in connection therewith, while the statutory offense was committed though the burned buildings were

not so used; and because of such fact the conclusion was reached that the defendant could not possibly be misled because of the technical error of the draftsman of the indictment in that particular. Confirmatory of the ground upon which that opinion was based, we insert from it this excerpt:

"Measured by these general observations, let us see whether the error in this indictment prejudiced the substantial rights of the accused. The indictment gives the name of the party accused, the county in which the crime was committed, and described the acts in language so plain that any person of ordinary intelligence could not fail to understand the nature of the crime charged. It is, we think, plain that the technical misuse of the word 'arson' did not and could not have misled or deceived Overstreet, or his counsel or the trial court. The word arson has a well known, popular, as well as legal meaning, and is generally and commonly understood to mean the unlawful burning of the property of another. And so, when one is charged with having burned the store house or other house of another, it is commonly understood that he is accused of the crime of arson. As illustrating the generally accepted and popular meaning of the word, we may notice that the legislature in adopting the chapter on crimes and punishments in the Kentucky Statutes, inserted therein a subdivision entitled 'arson,' and in this subdivision placed all the sections relating to the wilful and malicious burning of property. And so, the use of the word 'arson' in designating the crime of wilfully and maliciously burning property owned by another is not, according to the usually accepted meaning of the word, misleading or inapt, either under the Code or statute. If Overstreet, assuming him to be a person of ordinary intelligence, had read or heard read the indictment, he could have had no difficulty whatever in learning from it that he was charged with having burned, on the 21st of April, 1911, the storehouse of Herman Friedman in the county of McCracken. This indictment gave him all the information that was necessary to enable him to prepare his defense, and the trial court by reference to the statute fixing the penalty for house burning could have no difficulty in advising the jury or in pronouncing judgment."

As we have seen, there is no such similarity between, or ordinarily understood identity as to, the offenses here involved, and those dealt with in that case and, there-

fore, the grounds supporting that opinion are wholly absent from this record. This court, under Code provisions, has been and is yet more or less liberal in upholding indictments and in refusing to set them aside for technical and immaterial inaccuracies, which from the record it plainly appears did not prejudice the substantial rights of the defendant. But, courts are not at liberty to go any further than what is embodied in that statement, and when the repugnancy between the accusing clause of the indictment (in which the offense is named) and the descriptive part thereof, is of the nature found in this record the court should promptly set it aside and take such steps allowed by law to make it conform to the prevailing rules of proper criminal pleading.

It is scarcely necessary to say that the particular article or commodity involved, and to or concerning which the offense relates, will not operate to cure the defective pleading. Suppose the article involved was ordinary playing cards and in the accusatory part of the indictment the defendant was charged with the offense of gaming with cards, and in the descriptive part thereof it was alleged that he had sold playing cards without obtaining a license therefor, surely it could not be contended that under the doctrine of the Overstreet case the repugnancy was not fatal because such cards were factors in the accused offense, and also in the described one. The supposed case is in substance and essentially the same as the one before us.

We, therefore, conclude that the demurrer to the indictment should have been sustained and that nothing occurred at and during the trial to cure the error. Since there will, perhaps, be another trial, if upon a re-submission of the case another indictment should be returned, we decline to comment upon the sufficiency of the evidence to sustain the conviction of either defendant, and that and other questions are left open.

Wherefore, the judgment is reversed with directions to grant the motion for a new trial and for proceedings consistent herewith.