## Smith v. Commonwealth.

Oct. 11, 1940.

Charles C. Marshall, Judge.

H. V. McChesney, Jr., for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appealing from a judgment entered upon a jury's verdict of guilty, sentencing him to prison for ten years for shooting and wounding one James Gill, accused contends that the indictment was fatally defective, and that:

(2) The court erroneously overruled a motion for continuance.

(3) The judgment is not in accord with the verdict.

(5) The verdict is contrary to the evidence.

The proof is that upon a Sunday night in October, 1937, accused was sitting on the front porch of his home in New Castle, when Gill in company with another, came up. Appellant's mother, wife and Velita Carter were also on the porch, or on the premises. Accused and his wife left home and went down the street, as is said "to avoid trouble with Gill." After going down the street some distance, appellant and his wife returned home, because, as appellant claims, it was apparent that Gill was going to follow them. Gill and Miles did go back to the house, and while on the sidewalk, Gill took a flash light from the wife or Velita Carter and flashed it in Smith's face. Appellant remonstrated, but Gill again flashed the light, as Gill says "in a playful manner," and appellant hastily drew his pistol, fired twice, each time wounding Gill.

Appellant's claim is that he was in fear of Gill, and just after Gill had flashed the light a second time, Gill had his hand in his pocket. "I didn't see no weapon. He never came out with it because I didn't give him time to get it. I shot too quick." When asked if he saw Gill with a weapon, he said: "No, sir. He never saw mine either until I shot him or he wouldn't have been following me. I shot him in self-defense. I thought he was trying to kill me; that is the reason I shot."

Appellant said that on the night before the shooting he and his wife met Gill and he offered to shake hands with him; he "rubbed his fist under my nose, and said 'I'll give you one more chance;' I just walked on." About a week before the shooting, accused went to the county officers and asked for protection, and was told on one occasion to "go up the street instead of down the street." There was some evidence of bad reputation, and some trouble between them back in 1921.

Looking first to the indictment, we find as is said by counsel for appellant, that the accusatory part charged appellant with the crime of "unlawfully, wilfully and maliciously shooting at and wounding another with a deadly weapon with intent to kill * * *." The descriptive portion charged that Smith "did unlawfully, wilfully, feloniously and maliciously shoot at and wound James Gill, with a pistol, a deadly weapon * * * but from which shooting at and wounding death did not ensue," omitting the words "with intent to kill." Coun-

sel contends that there is such a variance as will require us to hold the indictment bad, relying on Criminal Code of Practice, Section 124, and a score of cases in which we have applied it. The section in part reads:

"The indictment must be direct and certain as regards—* * * 2. The offense charged. * * * 4. The particular circumstances of the offense charged, if they be necessary to constitute a complete offense."

There is no complaint that the indictment does not charge the commission of a public offense. Abstractly the complaint is that the first count upon which the whole indictment depends, is bad "due to the fact that it undertakes to charge the defendant with the crime of which he was convicted; but fails to charge any felony. Further what it does charge is at variance with and repugnant to the charge made in the descriptive part."

We gather from the brief, as being the serious contention, that the accusatory part, which contains the words "with intent to kill," charges the commission of a felony (and so it does), but since the descriptive part omits the words "with intent to kill," the indictment only charges a common law assault and battery, which is a misdemeanor. Kentucky Statutes, Section 1242.

Counsel, in support of his contention, cites us to a score of cases in which we have held indictments defective because of variance between the accusatory and descriptive clauses. Most of these were reversed, however, not on account of a failure to include an element of the offense charged, but because of a failure to charge an offense, or because the indictment was not direct and certain "as regards (4) the particular circumstances of the offense charged."

Looking to the instant indictment as a whole, there is no doubt in our minds but that it properly charged the offense denounced by Kentucky Statutes, Section 1166, and clearly advised accused just what charge he was expected to meet. We select, as exemplary, two of the cases upon which appellant relies with considerable insistence.

In Mays v. Com., 194 Ky. 540, 240 S. W. 58, 59, the indictment in the accusatory portion charged the offense

of selling spirituous and vinous liquors. The descriptive part charged the "selling, bartering, and lending * * *, keeping them for sale, and * * * transporting." There was demurrer and motion to require the commonwealth to elect, both of which were overruled. In this case we reversed for two sound reasons: First, the indictment was not certain as to the offense charged, and because it charged a "number of separate * * * offenses."

We were particular to distinguish the case of Overstreet v. Com., 147 Ky. 471, 144 S. W. 751, 752, wherein the principal question was the sufficiency of an indictment which accused appellant (and others) of "arson," a common law offense, and the description charged the unlawful burning of a storehouse, Kentucky Statutes, Section 1169. In holding the indictment good, we said:

"Strictly and technically speaking, the indictment is not good, either as an indictment for arson or for house burning. But, conceding this much, it does not follow that the demurrer should have been sustained, or that the motion for a directed verdict was improperly overruled."

We further said:

"We have, therefore, an indictment naming the offense of arson in the accusative part, but showing in the body, or descriptive part, that the offense committed was not arson, but statutory house burning. * * *

"It is, we think, plain that the technical misuse of the word 'arson' did not and could not have mislead or deceived Overstreet or his counsel or the trial court. * * *

"If Overstreet, assuming him to be a person of ordinary intelligence, had read or heard read the indictment, he could have had no difficulty whatever in learning from it that he was charged with having burned, on the 21st of April, 1911, the storehouse of Herman Friedman, in the county of McCracken. This indictment gave him all the information that was necessary to enable him to prepare his defense, and the trial court, by reference to the statute fixing the penalty for house burning could have no

difficulty in advising the jury, or in pronouncing judgment. And so we have no difficulty in putting this error in the class of harmless ones."

It would take too much space and time to point out instances where we have cast aside harmless technicalities, when convinced that the indictment was such as not to mislead or deceive. We find the reasoning in the Overstreet opinion followed in a great number of cases, as is evidenced by a reference to its citation in Shepard's notes. We refer particularly to Austin v. Com., 201 Ky. 615, 258 S. W. 86, 87, which is peculiarly fitting, since appellant was accused of "malicious striking and wounding," which offense was described as being such striking with a knife "with the felonious intent thereby to kill." The argument was that malicious striking and wounding was a common law assault and battery, while the offense described was a felony denounced by Kentucky Statutes, Section 1166, and of which latter accused was convicted. In holding the indictment sufficient, quoting from the Overstreet case, we said:

"Nor will any difference between the accusative part of the indictment and the body or descriptive part of it, that is not so substantial as to be misleading, be fatal to the sufficiency of the pleading. In other words, in considering the sufficiency of an indictment, it will be read and considered as a whole, and if when so read and considered it substantially conforms to the requirements of the Code in respect to the matters therein pointed out as material and necessary, it will be a good indictment."

Counsel relies with some force on our opinion in the case of Deaton & Boggs v. Com., 220 Ky. 343, 295 S. W. 167, wherein we held insufficient an indictment which accused the appellants of "the crime of confederating" and *described* two offenses, one denounced by Kentucky Statutes, Section 1241a-1, and another by Section 1223, for which different penalties were fixed, so that the indictment might authorize a conviction under either. We again distinguished the Overstreet case.

Space and time will not permit us to digest the many cases cited in support of counsel's contention. We have examined most of them and find that they may be distinguished from the case in hand. We are satis-

fied that the Overstreet and Austin cases, and those therein and later cited, justify the conclusion that appellant was neither mislead nor deceived by the omission of the words "with intent to kill" from the description, which stated circumstances necessary to constitute a complete offense.

(2) The record shows that a year prior to the instant trial there was a mistrial, and the matter was resubmitted, and indictment returned on April 18, 1939. Defendant was arraigned on the same day and his trial set for the 21st day of April. When the case was called appellant and his local counsel filed affidavits in support of a motion for continuance on the ground that there had not been sufficient time for preparation, and no effort at preparation, because the county attorney had informed counsel that if the indictment be re-returned, the case would be continued, "regardless of which promise, the commonwealth's attorney" insisted on assigning the case for trial on the 21st of April.

It was also asserted that appellant was not ready because of the absence of two witnesses whom he had subpoenaed, and in substance what he expected to prove by them, they being two who would testify that on a former occasion appellant had appealed to them for protection. The affidavit as to what one of the witnesses would have said if present was read to the jury by consent of the prosecutor; the other witness testified, so appellant was not prejudiced on this account. There is no showing that the granting of further time would have allowed better preparation.

It is complained that the court failed to instruct the jury properly. The court instructed on the offense denounced, on shooting in sudden affray, self-defense, and on reasonable doubt, also on the effect of the proven former convictions. However, the argument here is that the court instructed the jury that if they believed from the evidence that accused was guilty of the shooting of Gill "with the intent to kill him," they should find him guilty. The argument is the same as was advanced on discussion of the indictment.

The complaint of material variance between the verdict and the judgment arises on the fact that the verdict reads:

"We the jury find the defendant guilty, and fix his

punishment at twelve years in the State Penitentiary."

The judgment read:

"It is ordered by the court that he is guilty of malicious shooting at and wounding another with intent to kill, and two previous convictions, and shall be taken by the sheriff   *   *   *."

The argument, however, on this point is that since the court announced that the jury had found appellant guilty of previous convictions, their verdict should have been one visiting upon him a life penalty. Kentucky Statutes, Section 1130. Appellant would assume a serious risk if we should reverse. The court is only required by Criminal Code of Practice, Section 284, in rendering judgment, to "affix the degree of punishment to be inflicted as found by the verdict of the jury." That is what the court did in this instance, fixing it less than the maximum provided by the statute. In Coleman v. Commonwealth, 276 Ky. 802, 125 S. W. (2d) 728, 729, we wrote:

"Even if former convictions be conclusively established, it is yet within the discretion of the jury whether it will impose a penalty within the statutory limits prescribed for the single crime for which the accused is then being tried,   *   *   *   as disclosed in many decisions it has not been unusual for the juries to disregard former convictions."

To hold here error in respect of the judgment would require us to determine that the jury intended by its verdict to include a penalty for having been formerly convicted.

Section 340 of the Criminal Code of Practice provides that the court shall reverse a judgment "for any error of law appearing on the record when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby." If it could be conceived that the entry of the judgment in its form prejudiced the rights of defendant, or deprived him of any right vouchsafed under the law, we would not hesitate to reverse, but we are not thus impressed. This statement has reference to such points as have been discussed, as well as to the final one, which is that the verdict is contrary to and against the weight of the evidence.

The argument is to the effect, as has been in a great many cases, that a careful review of the evidence by this court will convince it that the jury did not properly weigh in favor of the defendant the proof or elements of shooting in sudden affray, or on his plea of self-defense. It will be noted that the court gave instructions both on shooting in sudden passion and on self-defense, hence the jury was not deprived of their right to weigh the evidence on both issues, and under our system of jurisprudence the jury, and not this court, is delegated with that power and duty.

We have often written that when the plea is one of self-defense, and the offensive act is admitted, it is incumbent on accused to offer convincing proof that the act was excusable. On the other point, when we look to all the testimony, we are led to conclude that there was proof, even on defendant's part, which might well tend to indicate a predetermination.

The jury no doubt considered, and properly weighed all the evidence. It had the right in so doing to take into consideration the question as to whether or not the accused used more force than appeared to be necessary in repelling the claimed anticipated danger. Lawson v. Com., 224 Ky. 443, 6 S. W. (2d) 488.

We fail to find any error which would justify reversal. The record shows, as we observe it, that appellant received a fair and impartial trial; hence we are compelled to affirm the judgment.