# Caswell v. Commonwealth.

Feb. 7, 1941.

■■■■■■■■■■■■■

J. Howard Holbert and Floyd K. Holbert for appellant.

Hubert Meredith, Attorney General, and R. Vincent Goodlett for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Appellant was convicted of the offense of cutting and wounding, with intent, etc. (Kentucky Statutes, Section 1166), the trial jury inflicting a penalty of five years' confinement, and from judgment entered accordingly, appeal is prosecuted; contentions of error require a brief statement of facts.

The assault occurred March 23, 1940, the proof for the commonwealth showing that some time during the day appellant went into the restaurant of Mr. Brashear, in Upton, where Gaddie was at the time. There arose a slight argument between Caswell and Gaddie, the subject being undisclosed, and the proprietor directed the two to leave his place. Gaddie left first and stopped on the store porch. It appears that Caswell then left, going some distance from the porch. Gaddie called or motioned to Caswell, and the latter walked back to the porch. Gaddie said that he did not want to have any trouble with Caswell, and witnesses say the latter at once drew his knife and began cutting Gaddie, who attempted to get away. A cut on Gaddie's throat required the taking of about forty stitches, and he was disabled for some four or more weeks. Thus Gaddie testified.

Mr. Brashear told of the presence of the two, and the argument and his directing them to leave, and their doing so; Gaddie first, and the proprietor then told Caswell, "You had just as well leave, he will be back after you in four or five minutes." Caswell then left. Witness did not see the difficulty on the outside. He had seen Caswell with two knives, but neither was visible at the time of the argument. A witness sitting in a car near the store saw Gaddie motion to Caswell, and the latter go to the porch; he did not hear what was said by either, "but there was only a slight delay" when Caswell began slashing at Gaddie with a knife.

Another eyewitness saw the two, who appeared to be slapping at each other; Gaddie was "backed up about 40 feet before Caswell left him." Other witnesses testify in about the same manner, and to like effect, none of them being enabled to tell what, if anything, was said by the parties after Caswell went back to the porch. The town marshal, who was across the street, saw the parties struggling, and saw a knife flash, and blood spurt from Caddie's throat. All these witnesses (save Gaddie) testified as to the reputation of each party for good behavior, peace and quietude, and gave both bad reputations. The foregoing is substantially the commonwealth's proof.

Caswell, who alone testified in defense, corroborated the other witness as to his presence in the store, and their leaving at Brashear's request. He said that Gaddie said something to him at the time which he did not understand. After he had gone a short distance he heard some one call his name and say: "Wait, Jack you s. o. b.; then defendant held his hand up questioning if the speaker who turned out to be Gaddie, was talking to him." Accused waited for Gaddie to come up, and, as he relates, "with both hands in his pockets," and said to Caswell, "G. d. you, I have got you on a spot; you'll do what I say or else." He said Gaddie started to draw his right hand out of his pocket; Caswell caught it with his left hand, and thinking that Gaddie was about to draw a weapon, he, with his knife in his rgiht hand, cut Gaddie. It was not shown that Gaddie had a weapon.

The evidence as we have given it, in substance, appears in the record in narrative form, and is perhaps lacking in detail. We observe that there was noted at no place in the narrative testimony either objection or exception to any evidence admitted or offered and rejected, hence we are unable to pass on such questions. However, it is not urged with any force that error was committed in this respect. There was motion for a directed verdict at the close of the commonwealth's testimony, though not renewed at the close of all evidence, in so far as we observe. A mere glance at the testimony adduced by the commonwealth, as above related, manifests the propriety of the court's refusal to take the case from the jury; likewise it is as equally apparent that the jury's verdict of guilt was fully justified by the

proof. It was another case of self-defense, and undoubtedly the accused did not, at least to the satisfaction of the jury, make a convincing impression.

The grounds discussed in brief are of a technical nature, and if sustainable reflect on personal rights guaranteed by our fundamental laws. It is argued that accused had the right to be heard by himself and counsel (Constitution, Section 11), and that such right carries with it the correlative right to have reasonable time in which to prepare and present defense, and in this assertion we agree, since we have on so many occasions thus written, where we found the case necessitated the application of these safeguarding principles, for example, Shelton v. Com., 280 Ky. 733, 134 S. W. (2d) 653; Mitchell v. Com., 225 Ky. 83, 7 S. W. (2d) 823, which, with like cases, are cited by appellant. The principles announced are stressed by appellant's counsel, since it is claimed that appellant was not able to employ counsel, though such failure may have been due to other reasons divulged by appellant himself.

The difficulty occurred March 23, 1940; the indictment was returned six or seven days later, and was assigned for trial at a succeeding term. On June 4th the indictment was called up; in the interim appellant was free on bond. The commonwealth announced ready, and the "defendant moved the court to continue the case and allow his attorney time to prepare same." This motion was overruled. It appears that upon calling of the indictment, the court appointed counsel for the accused. It may be noted at this point, there was no sort of showing made in support of the motion to continue.

Looking to the transcript before us, while it appears that the trial was begun and ended on June 4, it was not until June 27, that motion for a new trial was made, wherein for the first time was there any suggestion that accused had been unable to prepare his defense, and at which time it was also claimed that a new trial would permit accused to present some newly discovered evidence which would redound to his benefit.

We might dismiss this entire subject by merely pointing to the fact that the court could hardly commit an error in overruling a motion for continuance, where there is before the court nothing more than the simple

motion. Section 189 of the Criminal Code of Practice, requires that such a motion must be supported by affidavit setting out reasons for a continuance, with other requisites where the motion is based on the absence of witnesses. Smith v. Com., 278 Ky. 384, 385, 128 S. W. (2d) 590. See Dewberry v. Com., 241 Ky. 726, 44 S. W. (2d) 1076.

Were it not for the fact that there was some doubt expressed by counsel, as to whether supporting affidavits be necessary where the ground for continuance is based on lack of time for preparation (Cass v. Com., 236 Ky. 462, 33 S. W. (2d) 332), we would pursue this discussion no further. However, we shall view the situation as if affidavits (on the one ground) had been filed with and in support of the motion.

In appellant's affidavit he asserted that up to and at the time of trial he had been and was unable to employ counsel. He then says, or intimates, that his chief reason was that Gaddie had promised him, and he had agreed (ostensibly) that upon payment to him by Caswell the sum of $30 he would have the prosecution dismissed, but that the negotiation fell through, the time of breach not being given.

As to newly discovered evidence, he says that he had learned after the trial that one Farris would testify, if allowed, that he "saw Gaddie walk from the scene of the difficulty only a few minutes afterwards, to a doctor's office 200 yards away." Farris by affidavit says the same thing, but it is impossible for us to conceive how, and in what manner, this evidence would be of aid to the jury in determining the question of guilt or innocence. Gaddie might have walked many times the distance after the difficulty, although his throat was slashed.

He could also prove by one Stanley, who was in the military service at the time of trial, that he knew Gaddie's reputation for peace and quietude was bad, and that on several prior occasions he had seen him carrying a pistol. Stanley says the same thing by way of affidavit, but admitting it as true (which appellant fails to say), the testimony would not illuminate. The first portion would be cumulative, since other witnesses testified to the same, and appellant had ample opportunity to present further similar evidence if obtainable, and from

the fact that the commonwealth's witness did not give Gaddie a good name, it may be conceived that appellant would have had little difficulty in this respect.

Counsel for appellant, who conducted the defense, in his affidavit merely says that he was pressed into service without opportunity to summon witnesses, who they were or might have been is not shown, or "to prepare the case for trial." The affidavit lacks statements of any facts which would tend to convince this, or the trial court that anything more could have been done on behalf of the accused than was done. The matter involved, and the trial, did not present any complicated situation or one which could have been improved, in so far as is disclosed, by allowing more time.

Appellant had more than two months in which to look to the preparation of his defense. It is apparent that he did not bestir himself because of the negotiations with Gaddie, leading to a hoped for dismissal. This, of course, while set up as a ground, is not to be considered, and if considered, not to be sanctioned by this or the trial court, as we held in Miller v. Com., 270 Ky. 378, 109 S. W. (2d) 841.

Summing up and giving due consideration to the motion and grounds, the affidavits filed in support, we are of the opinion that had the showing made some two weeks or more after the trial was begun, been made at that time, the court of first instance would have been fully justified in refusing continuance. There is shown a woeful lack of interest and diligence in an effort of appellant to meet what he now calls a serious charge, occasioned, perhaps, by the belief and hope that the victim of his knife would carry out some proposal to compound a felony.

In the absence of more convincing supporting proof to show any prejudice to appellant's rights by refusal to continue on either of the grounds asserted, we find it impossible to conceive that a new trial would result other than the one had, which seems to have been fairly and impartially accorded. We have written in many opinions that a judgment in a criminal case will not be reversed unless there be a showing that a new trial would permit a better or more complete defense to have been prepared, and that the failure was due to causes not of the one seeking the relief. Piercy v. Com., 195 Ky. 725,

244 S. W. 52; McDaniel v. Com., 246 Ky. 688, 56 S. W. (2d) 340; Smith v. Com., 284 Ky. 80, 143 S. W. (2d) 859; Wolfe v. Com., 281 Ky. 301, 135 S. W. (2d) 896; Miller v. Com., 270 Ky. 378, 109 S. W. (2d) 841, 844. After careful review we fail to find error; therefore the judgment is affirmed.