Oscar SPEARS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 25, 1966.

Sanders & Redwine, Pikeville, for appellant.

Robert Matthews, Atty. Gen., David Murrell, Asst. Atty. Gen., for appellee.

MOREMEN, Chief Justice.

Appellant, Oscar Spears, was accused in the Pike Circuit Court in the first count of an indictment with having "committed the third offense of illegally selling alcoholic beverages in dry local option territory." In counts two and three he was charged with having previously been convicted in the Pike Quarterly Court, on two separate occasions, of the "offense of illegally possessing alcoholic beverages for the purpose of sale." He was found guilty, as charged, and sentenced to one year's confinement in the penitentiary.

It is contended that the language of the indictment was not sufficient to charge a felony under KRS 242.990. This reads:

"(1) Any person who violates any of the provisions of this chapter, for which no other penalty is herein provided, shall, for the first offense, be fined not less than twenty nor more than one hundred dollars and, if a natural person, imprisoned in the county jail for not less than thirty nor more than sixty days; for the second offense he shall be fined not less than forty nor more than two hundred dollars and, if a natural person, imprisoned in the county jail for not less than sixty nor more than one hundred and twenty days; for the third and each subsequent offense he shall, if a natural person, be confined in the penitentiary for not less than one nor more than two years, and if a corporation, be fined not less than one thousand nor more than two thousand dollars.

"(2) Any officer who violates subsection (2) of KRS 242.370 shall be fined not less than one hundred nor more than five hundred dollars.

"(3) Quarterly courts, justices of the peace and police courts shall have concurrent jurisdiction with the circuit court in the trial of all offenses committed under this chapter, where the penalty does not exceed a fine of one hundred dollars and imprisonment in the county jail for not exceeding sixty days."

The convictions of the first two offenses, as charged in the indictment, were obtained in the quarterly court and it is argued that the mere fact that he had committed two previous offenses meant nothing if they were had in that court.

In Crabtree v. Commonwealth, Ky., 278 S.W.2d 732, it was held that although under subsection (3) of the above statute it is provided that a quarterly court shall have jurisdiction concurrent with a circuit court, a quarterly court does not have jurisdiction to try an accused for a second offense violation because it is specifically stated that its jurisdiction is limited to cases where the penalty does not exceed a fine of $100 and imprisonment in the county jail not exceeding 60 days, while for the second offense under subsection (1), the maximum punishment is $200 and 120 days' imprisonment. Appellant therefore argues that the accused must be convicted in the circuit court for the second offense before he can be tried for the third offense. It is contended that regardless of the number of times a man is convicted in the quarterly court, it would amount only to the first offense as defined by the statute because it is the fine and penalty meted out to the defendant that makes it a conviction for the second offense.

This is indeed an ingenious argument and we find no opinion where it has heretofore been considered. In countless cases we have approved instructions which did not require a finding by the jury that the defendant had been convicted of the second offense violation with its increased penalties in order to punish for a third offense violation. Under the Habitual Criminal Act

(KRS 431,190) where an increased penalty for the second felony is provided we have never made it a condition precedent that there should be a conviction for that offense before the third offense becomes a felony. We can not agree that it was the intention of the statute that an offender would be immune from prosecution for a third offense until a second conviction had been had with its accompanying increased penalties. We have so construed that statute for many years in regard to indictments and instructions. We believe the statute is more concerned with the number of offenses which have been committed and is intended to discourage recidivation rather than accumulation of punishment. It is the offenses which are paramount—not the punishment. Appellant should not be heard to complain because the full sanctions of the statute were not invoked after his second offense.

■ Appellant contends that the court erred in failing to give an instruction which submitted his theory of defense to the jury. Once again we are faced with the question of whether a concrete instruction was required.

Appellant testified that at the time he was arrested his ex-wife who had remarried, together with her husband, was visiting him in order that she might see her son. Appellant had leased a portion of his house to a third person who used the room for the most part for storage space, but who also kept a bed there and occasionally slept there. Apparently with no objection from the lessee he permitted his former wife and her husband to sleep on the leased premises. Herschel Fields an undercover man for state trooper, Donald Borba, testified that he purchased the beer from appellant. Appellant testified:

"Q. Did you talk to Fields when he came in? "A. Came in and said he wanted six (6) cans of beer and I told him I wasn't selling beer, I was under peace bond and not selling, and had always come there for

something like two or three years ago, any place in the house, any time he comes, and comes often day and night and walked on back through the house, and when he come out he had this pack with something in it, so I asked him what he had, and he just walked on.

"Q. Didn't say anything to you? A. Just walked on.

"Q. Did you know what was in the sack? A. Didn't know what was in it. Didn't think about any beer. I knowed these fellows came had some beer, but I didn't know they had it back in there at the time.

"Q. Knew who had some? A. Henderson and his wife. They brought it with them as they came through. Wise picked up beer—no, come through Cumberland, I believe."

In short, appellant based his defense on the fact that the beer was purchased by Henderson and his wife, stored in the back room and Fields merely went to that portion of the house, picked up the beer and returned to the police car. Trooper Borba went with Fields to appellant's house, gave him money to make the purchase, saw him leave the house with the 6-pack of beer, but did not actually see a sale. The instruction given by the court reads as follows:

"If the jury believe from the evidence beyond a reasonable doubt that the defendant, Oscar Spears, in this County and within 12 months before the indictment did keep for sale, beer, a malt liquor, an intoxicating beverage at the time testified to by the witnesses, Donald Borba and Herschel Fields, you will find him guilty as charged in the indictment and fix his punishment at a fine in any sum of not less than $20 nor more than $100 and in addition at the confinement in jail of not less than 30 days nor more than 60 days; and may in your discretion provide in your verdict that he shall work at hard labor until the fine

**696**

and costs or imprisonment are satisfied, or until all are satisfied."

It was pointed out in Reynolds v. Commonwealth, Ky., 257 S.W.2d 514, that:

"In our cases we have written two rules as to when an accused is entitled to a concrete instruction covering his theory of the case. One rule is to the effect that where he admits the commission of the apparent offense, or the essential elements thereof, and relies upon facts and circumstances amounting to an avoidance of the crime, he is entitled to a concrete instruction covering his theory of the case, and a mere general instruction is not sufficient. (Citing cases.)"

"The other rule is to the effect that where the instruction submitting the Commonwealth's theory of the case is couched in such language the ordinary juror can easily understand, and its negative (raised by the usual reasonable doubt instruction) completely and adequately covers the defense of the accused, it is not necessary to give an affirmative instruction embodying his theory. (Citing cases)."

We believe the instructions quoted above properly fall within the second rule. The jury were told that if they believed the story told by Herschel Fields was true, it would find the appellant guilty. It seems to us they were faced with the simple problem of deciding which of the two witnesses, Herschel Fields or appellant, should be believed.

Appellant also contends, and we believe correctly, that the court erred in instructing on the illegal possession for the purpose of sale when the indictment had charged illegal sale of alcoholic beverages.

It often has been held that instructions should substantially follow the language of the indictment. Whitaker v. Com., 188 Ky. 95, 221 S.W. 215, 10 A.L.R. 145, and Stanley's Instructions to Juries, § 767. An indictment for a statutory offense, in turn, should follow the language of the statute in charging the offense, or the equivalent.

In a number of cases this Court has stated that unlawful possession for the purpose of sale is a separate offense from that of illegally selling alcoholic beverages in dry local option territory. See Mayes v. Com., 194 Ky. 540, 240 S.W. 58; Mullins v. Com., 216 Ky. 182, 286 S.W. 1042; Newton v. Com., 198 Ky. 707, 249 S.W. 1017. In Sprinkles v. Com., 301 Ky. 161, 191 S.W.2d 218, appellant was charged with selling liquor in dry local option territory. The opinion stated:

"It was also error to instruct the jury to find the appellant guilty, if they believed that she had liquor in her possession for sale in local option territory, because the indictment made no reference to this offense."

Therefore Instruction No. 1 should have concerned illegal sale rather than illegal possession.

Judgment reversed.